BLEAKLEY PLATT & SCHMIDT, LLP
John I. O'Neill, Esq.
One North Lexington Avenue
White Plains, New York 10601
(914) 949-2700
*Attorneys for Zone Telecom, Inc.*

Hearing Date and Time:
September 16, 2009, at 2:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

        CCT COMMUNICATIONS, INC.,

                    Debtor.

Chapter 11

Case No. 07-10210 (smb)

---

## TRIAL BRIEF OF ZONE TELECOM, INC. IN SUPPORT OF MOTION BY GLOBAL CROSSING TELECOMMUNICATIONS, INC. FOR AN ORDER DISMISSING OR CONVERTING THIS CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112(b)(1)

TO THE HONORABLE STUART M. BERNSTEIN,
   CHIEF UNITED STATES BANKRUPTCY JUDGE:

      Zone Telecom, Inc. ("Zone"), a creditor and party in interest, by its attorneys, Bleakley Platt & Schmidt, LLP, submits this brief in support of the motion (the "Motion") by Global Crossing Telecommunications, Inc. ("Global Crossing") for an order pursuant to section 1112(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") dismissing or converting the chapter 11 case of CCT Communications, Inc. ("CCT" or the "Debtor").

## PRELIMINARY STATEMENT

The Debtor is a small business debtor within the meaning of Bankruptcy Code § 101(51D). As such, the Debtor was required to confirm its plan of reorganization within 45 days after its filing. 11 U.S.C. § 1129(e). That deadline came and went more than 20 months ago. The circumstances here render this chapter 11 case ripe for dismissal or conversion for cause. 11 U.S.C. § 1112, subd. (b)(1) & (b)(4)(J). Accordingly, Zone supports the Motion and joins with Global Crossing in respectfully urging that this Court order dismissal of the case.

## PRIOR PROCEEDINGS

The Debtor commenced this case on January 29, 2007 (the "Petition Date") with the filing of a voluntary petition (Docket No. 1) for relief under chapter 11 of the Bankruptcy Code. The Debtor represented in its accompanying schedules a pre-petition debt totaling $1,028,249.64. *See* P-0001.[1] Following a section 341(a) creditors' meeting conducted on April 9, 2007 (Docket No. 7), the Debtor filed an amended petition filed on April 27, 2007 (Docket No. 9), in which the Debtor acknowledged that it was a "small business debtor" within the meaning of Bankruptcy Code § 101(51D).[2] The Debtor's amended schedules (Docket No. 10) listed aggregate pre-petition debt of $1,292,507.62. *See* P-0002.

On July 13, 2007, the Debtor filed a motion (Docket No. 20) seeking to extend its period of exclusivity for the filing of a chapter 11 plan and disclosure statement. *See* P-0006. In that motion,

---

[1]    References to "P-____" denote Global Crossing's designated trial exhibits.

[2]    While the small business designation was formerly elective, for cases commenced on or after the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 108-9 (2005), treatment as a small business debtor is mandatory where, as here, the debtor fits the statutory definition. 11 U.S.C. § 101(51D); *see* FED. R. BANKR. P. 1020(a); *see also* 1 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 1.02[5][b][vii], at 1-33 (15th ed. rev. 2007).

the Debtor asserted that "cause" existed under Bankruptcy Code § 1121(e)(1)(B) for this Court to

extend the statutory, 180-day exclusivity period, applicable to small business debtors, for an

additional 90 days, to October 29, 2007. *Id.* at 4-5. Among the justifications for this extension of

time, the Debtor noted its plan to object to certain claims:

> 9.       * * * The Debtor is in the process of reviewing and analyzing
> the filed claims and is simultaneously preparing a motion objecting
> to certain of the filed claims. Specifically, the Debtor is objecting to
> the claims filed by: (1) the New York City Department of Finance
> filed in the amount of $453,676.00; (2) Zone Telecom, Inc. ("Zone")
> filed in the amount of $235,000.00; and (3) Global Crossing
> Telecommunications, Inc. ("Global") filed in the amount of
> $1,027,022.    The aggregate amount of these claims totals
> $1,715,698.00. The Debtor believes these amounts will and should be
> significantly reduced * * * According to the Debtor, the aggregate
> total of these claims should therefore be reduced from $1,715,698.00
> to approximately $200,000.00.

*Id.* at 2-3.

No objections were interposed to the Debtor's motion, and in ostensible reliance upon the

Debtor's representations, the Court granted its application on July 25, 2007 (Docket No. 27),

extending the Debtor's exclusivity period for the maximum 300 days permitted under Bankruptcy

Code § 1121(e)(2), to November 26, 2007.[3] *See* P-0007. The Debtor fully exhausted this extension

before filing a proposed plan of organization (Docket No. 47) on November 26, 2007, along with

a proposed disclosure statement (Docket No. 46). The Debtor proposed a 100% plan, under which

allowed, unsecured claims were to be paid in full, with interest. To fund the plan, the Debtor

acknowledged[4] that it would be required to prosecute to a successful conclusion certain alleged

---

[3]       The Debtor's motion sought only a 90-day extension, to October 29, 2007. *See* P-0006, at 5.

[4]       *See* Disclosure Statement (Docket No. 46), at 2, 8-9, 15, 18-19.

monetary claims against Global Crossing[5] and/or Zone.[6] In point of fact, the plan defined its "effective date" as "the earlier of the first business day that is 30 days after entry of a Final Order resolving (1) the Global Adversary Proceeding or (2) the Zone Adversary Proceeding."[7]

As a small business debtor, however, CCT was confronted with the mandate of Bankruptcy Code § 1129(e) – namely, that it confirm its plan within 45 days of filing, the expiration of which fell on January 10, 2008. Faced with a statutory deadline that it could not meet, the Debtor moved to extend the time for plan confirmation under Bankruptcy Code § 1121(e)(3) (Docket No. 54, the "1121(e)(3) Motion"). Consistent with its plan and disclosure statement, the Debtor sought to extend the deadline for plan confirmation "to a date * * * 30 days subsequent to the entry of a final order resolving the Global Crossing Adversary Proceeding and/or the Zone Telecom Adversary Proceeding or any appeal therefrom."[8]

In urging this indefinite extension of time to obtain confirmation, the Debtor presented no credible, evidentiary facts that it was "more likely than not that the court [would] confirm a plan

---

[5]        In July 2007, Global Crossing commenced an adversary proceeding against the Debtor (Adv. Proc. No. 07-01942), seeking, *inter alia,* a judicial declaration that the Debtor's contract with Global Crossing had been properly terminated pre-petition or that, alternatively, Global Crossing was entitled to terminate telecommunication services under the contract for the Debtor's continuing, material breach of the agreement. The Debtor counterclaimed for declaratory and injunctive relief, as well as money damages. Certain of the Debtor's counterclaims, as well as Global Crossing's separate application for relief under Bankruptcy Code § 366, proceeded to trial in January 2008. On July 2, 2008, a memorandum decision (Adversary Docket No. 55) issued in which the Court: (i) denied Global Crossing's motion to require CCT to post an additional deposit to secure payment of post-petition service; and (ii) ruled in CCT's favor finding that Global Crossing had breached the parties' contract by blocking international calls, refusing to provide services under an "all you can eat" pricing structure, and otherwise interfering with telecommunication services being provided to CCT. The remaining claims and counterclaims in the adversary proceeding await trial.

[6]        The Debtor delayed two years following the Petition Date before commencing an adversary proceeding against Zone, in which the Debtor seeks recovery of some $3.6 million based on theories of breach of contract and account stated. *See* Adv. Proc. No. 09-01024. Zone disputes the Debtor's allegations and intends to defend against its claims vigorously.

[7]        *See* Plan (Document No. 47), at 7; *see also* Disclosure Statement (Docket No. 46), at 15.

[8]        *See* 1121(e)(3) Motion (Docket No. 54) ¶ 12, at 4.

within a reasonable period of time," as was the Debtor's burden. *See* 11 U.S.C. § 1121(e)(3)(A); 7 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 1121.07[3], at 1121-10 (15th ed. rev. 2008). Instead, the Debtor inexplicably chose to rely upon its counsel's naked conjecture concerning the outcome of uncertain future events:

> 13.    The Debtor *believes* it should be granted the extension of its time to confirm its plan so that it can and will have sufficient time to prosecute the Zone Telecom Adversary Proceeding and defend itself and prosecute its counterclaims in the Global Crossing Adversary Proceeding. * * *

> 14.    * * * Good cause exists to extend the Debtor's time to confirm its plan as the plan and the proposed distributions to creditors are based on the proceeds generated as a result of the resolution of the Global Crossing Adversary Proceeding and/or the Zone Telecom Adversary Proceeding. The requested period allows for these litigations to proceed to their conclusion, which the Debtor *believes* will result in an orderly, and *hopefully consensual* reorganization of the Debtor."

*See* Docket No. 54, at 5-6 (emphasis supplied).

Zone and Global Crossing both opposed the 1121(e)(3) Motion,[9] arguing that the practical effect of the requested relief would be to put this chapter 11 case in limbo for months, if not years, and deprive the Debtor's creditors (Zone included) of a reasonably prompt resolution of their claims. A hearing was conducted on December 20, 2007, at the conclusion of which the Court denied the 1121(e)(3) Motion. An order to that effect was entered on December 26, 2007 (Docket No. 80). No appeal was taken from the Court's determination.

The Court's December 26, 2007 order set the stage for the instant Motion – made by Global Crossing (Docket No. 145) seeking the dismissal or conversion of CCT's chapter 11 case pursuant

---

[9]    *See* Docket Nos. 66, 67.

to Bankruptcy Code § 1112(b)(1). The gravamen of the Motion was (and is) that CCT's failure to confirm a plan of reorganization within the time limitations prescribed for small business debtors under Bankruptcy Code § 1129(e) constituted statutory "cause" under section 1112(b)(4)(J), requiring the Court to convert or dismiss the case in the absence of the finding of "unusual circumstances. 11 U.S.C. § 1112(b)(1) & (2).

The Debtor opposed the Motion (Docket No. 154), asserting – for the first time – that it was *not* a small business debtor after all. In support of this argument, the Debtor blithely represented to the Court that its pre-petition debt – quantified at $1,292,507.62 in CCT's amended schedules (Docket No. 10) – had inexplicitly grown to between $2,097,109.32 and $2,140,922.65 (Docket No. 154, Exhibit A). Both Zone and Global Crossing have taken vigorous exception to the Debtor's creative accounting and have filed submissions with the Court as to why the Debtor's math does not hold water. *See* Docket Nos. 152, 155, 159, 160 & 161.

The Motion was originally returnable March 5, 2009, and has been adjourned from time to time afford the parties the opportunity to present additional submissions to the Court and to permit CCT and Global Crossing to explore a consensual resolution of their adversary proceeding, which is in mediation. On various occasions, the Court has indicated the possible necessity to conduct an evidentiary hearing to resolve possible issues of fact presented by the Motion. *See, e.g.,* 4/22/09 Tr. 3:2-6, 10:13-21, 13:8-25[10]

Zone believes that the incontrovertible facts demonstrate that the Debtor's pre-petition debt is well below the $2 million statutory ceiling applicable to small business debtor treatment when this case was commenced. In point of fact, the sum of claims listed in the Claims Register and the

---

[10] "4/22/09 Tr. ___" is intended as a reference to the transcript of pre-trial and status conferences conducted before the Court of April 22, 2009, which appears as Appendix A.

Debtor's amended schedules conclusively establish that fact beyond any reasonable dispute. Moreover, the Debtor's attempt to massage the numbers in order to gain an unfair litigation advantage is too little and too late. Based on the uncontroverted facts and applicable law discussed below, the Debtor's effort to escape the consequence of a clear statutory mandate should receive short shrift from this Court.

ARGUMENT

I.    THE DEBTOR'S FAILURE TO CONFIRM A CHAPTER 11 PLAN IN COMPLIANCE WITH THE TIME PRESCRIBED BY BANKRUPTCY CODE § 1129(e) CONSTITUTES STATUTORY "CAUSE" FOR DISMISSAL OR CONVERSION PURSUANT TO SECTION 1112(b)(1).

In a small business case, Bankruptcy Code § 1129(e) requires that a plan be confirmed within 45 days after it is filed, unless the deadline is extended. 11 U.S.C. § 1129(e); *In re J. D. Mfg., Inc.*, No. 07-36751, 2008 Bankr. LEXIS 2719, at *9 (Bankr. S.D. Tex. Oct. 2, 2008); *see* 7 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 1129.09, at 1129-198 (15th ed. rev. 2006).

The Debtor's failure to confirm its plan by January 10, 2008 constitutes "cause" – within the meaning of section 1112(b) – to dismiss or convert this Chapter 11 case. 11 U.S.C. § 1112(b)(4)(J); *see In re Save Our Springs (S.O.S.) Alliance, Inc.*, No. 07-10642, 2008 Bankr. LEXIS 2308, at *2 (Bankr. W.D. Tex. Aug. 8, 2008) (dismissing Chapter 11 case for failure to obtain confirmation within deadlines of sections 1121(e)(2) & 1129(e) and holding that the debtor was estopped to deny it was a small business debtor); *In re Caring Heart Home Health Corp.*, 380 B.R. 908, 910 (Bankr. S.D. Fla. 2008) (construing the language of section 1121(e)(3) to be "conclusive" – requiring denial of untimely motion to extend 45-day deadline for confirmation under section 1129(e) and dismissal of Chapter 11 case); 7 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 1129.09, at 1129-198 (15th

ed. rev. 2006) ("If a small business debtor does not achieve confirmation within [the statutory] deadlines, the court will have to dismiss the case on the motion of a party in interest").

Once a movant under Bankruptcy Code § 1112(b) establishes cause, the court "shall" dismiss or convert a Chapter 11 case, 11 U.S.C. § 1112(b)(1), except in three, narrowly circumscribed situations.[11] *See, e.g., Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.)*, 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007) (noting that, under the BAPCPA amendments, the language of section 1112(b)(1) is now mandatory and no longer simply permissive).

Assuming CCT is a small business debtor, there can be no reasonable quarrel with the proposition that "cause" justifying dismissal or conversion under section 1112(b)(1) exists here. This Court may take judicial notice of the fact that the Debtor filed its proposed plan of reorganization on November 26, 2007 (Docket No. 47) and that more than 45 days have elapsed since such filing. *See* FED R. EVID. 201; *Logan v. United States*, 272 F. Supp. 2d 1182, 1184, n.1 (D. Kan. 2003). Judicial notice likewise may be taken of the fact that the Court denied the Debtor's application to extend the 45-day deadline.[12] *See In re Snider Farms, Inc.*, 83 B.R. 977, 986 (Bankr. N.D. Ind. 1988) (bankruptcy court is duty bound to take judicial notice of its records and files). These facts conclusively establish cause under Bankruptcy Code § 1112(b)(4)(J). *See Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.)*, 374 B.R. at 561-62.

---

[11]    Zone respectfully submits that the three, narrow statutory exceptions to mandatory dismissal or conversion contained in Bankruptcy Code § 1112(b)(1) have no application at bar. For a detailed discussion of these exceptions, see Zone's February 24, 2009 response in support of the Motion (Docket No. 152, at 7-9).

[12]    *See* Docket No. 80.

II.    A FAIR READING OF THE CLAIMS REGISTER AND
THE DEBTOR'S AMENDED SCHEDULES ESTABLISH
ON THEIR FACE THAT ITS PRE-PETITION DEBT IS
LESS THAN $2,000,000 AND THEREFORE, CCT IS
SUBJECT TO TREATMENT AS A SMALL BUSINESS
DEBTOR.

There are two sources to which the Court may look to determine the amount of CCT's pre-petition debt – the claims register and the Debtor's amended schedules (Docket No. 10). *See* P-0002.[13] Fairly read, what these sources show is an aggregate pre-petition debt of $1,970,571.55. On their face, the claims register and schedules demonstrate, as a matter of law, that CCT is properly subject to treatment as a small business debtor.

The calculation of CCT's pre-petition debt from these sources shows the following:

Claims Register
NYS Dep't of Taxation & Finance[14] . . . . . . . . . . . . $9,337.62
Metcom Network Services[15] . . . . . . . . . . . . . . . . . . 8,146.90
New York City Dep't of Finance[16] . . . . . . . . . . . 453,676.00
NYS Workers' Compensation Board[17] . . . . . . . . . . 8,039.17
Zone Telecom[18] . . . . . . . . . . . . . . . . . . . . . . . . . 235,000.00
Global Crossing Telecommunications[19] . . . . . . . 1,027,022.00

---

[13]        As noted, *supra*, at 6, the Debtor has belatedly come to see the wisdom of heavy pre-petition debt and now proclaims that the claim amount in its *amended* schedules are significantly understated. *See* P-004, P-0005. Despite the passage of some seven months since making that assertion, however, the Debtor *has made no effort* to amend its schedules.

[14]        *See* Claim #3 filed on 5/21/07. Original claim (#1) filed 5/14/07 in amount of $6,454.28. Amended claim (#2) filed 5/18/07 for $9,015.52. Further amended by second amended claim (#3).

[15]        *See* Claim #4 filed 6/1/07.

[16]        *See* Claim #5 filed 5/29/07.

[17]        *See* Claim #6 filed 6/11/07.

[18]        *See* Claim #7 filed 6/12/07.

[19]        *See* Claim #9 filed 6/12/07.

Connecticut Dep't of Labor[20] . . . . . . . . . . . . . . . . . . . . . 166.47
IRS – Department of Treasury[21] . . . . . . . . . . . . . . . 11,781.11

$1,753,169.27

Amended Schedules – Virtual Communications
Airborne Express . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $869.28
American Building Maintenance . . . . . . . . . . . . . . . . . . 649.50
AT&T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,516.49
Bell Atlantic . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 572.88
Brown & Welsh, P.C. . . . . . . . . . . . . . . . . . . . . . . . . . . 172.78
MFS Telecom, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . 38,623.22
Minolta Business Systems . . . . . . . . . . . . . . . . . . . . . 1,992.82
Rubicon Technologies . . . . . . . . . . . . . . . . . . . . . . . . 2,996.93
St. Paul Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . 13,718.54
Zihal Design . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 385.00

65,497.44

Amended Schedules – Insider Claims
Call Center Technologies . . . . . . . . . . . . . . . . . . . . 108,487.15
Dean Vlahos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,657.52

110,144.67

Amended Schedules – Other Claims
111 Chelsea LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . $9,204.51
Cogent Communications . . . . . . . . . . . . . . . . . . . . . 10,786.77
Federal Express . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,706.83
James A. Karamansis . . . . . . . . . . . . . . . . . . . . . . . . . 2,502.30
Jennifer Pierce . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,165.94
Lambert & Shackman . . . . . . . . . . . . . . . . . . . . . . . . 9,028.82
Metcom Network Services . . . . . . . . . . . . . . . . . . . . . 5,250.00
Tier Zero . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,575.00
Time Warner Telecom . . . . . . . . . . . . . . . . . . . . . . . . . 540.00

41,760.17
$1,970,571.55

In point of fact, it is Zone's position that CCT's pre-petition debt stands at substantially less than $1,970,571.55. We discuss the rationale for that proposition below, as well as respond to palpably improper calculations of the Debtor.

---

[20]    *See* Claim #10 filed 7/30/07.

[21]    *See* Claim #12 filed 9/5/08. Originally filed as Claim #8 on 6/12/07 in amount of $11,781.11. Amended by Claim #11, filed 2/11/08 for $102,480.79. Further amended by Claim #12 in the reduced amount of $11,781.11.

A.    Global Crossing.

The Debtor acknowledges Global Crossing's filed Claim No. 9 in the amount of $1,027,022.00 but asserts that it should be enhanced by $30,440.00 to reflect the purported post-petition setoff of a pre-petition deposit (plus interest). The record is devoid of evidence concerning setoff and the claim itself merely characterizes the $30,440.00 as a credit against Global Crossing's pre-petition claim, as is required. *See* FED R. BANKR. P. 3001(a). In any event, the Debtor could have filed a proof of claim on Global Crossing's behalf for this sum within up to 30 days after the bar date.[22] *See* FED. R. BANKR. P. 3004. The Debtor failed to do so, however, and Claim No. 9 stands as prima facie evidence of the validity and amount of Global Crossing's pre-petition claim. FED. R. BANKR. P. 3001(f).

B.    Internal Revenue Service.

A second error that the Debtor commits in calculating the filed proofs of claim is to aggregate Claims Nos. 11 & 12 filed by the Internal Revenue Service.  Review of the claims register, as well as the claims themselves, reveals that Claim No. 12 represents an *amendment of* Claim No. 11. By adding the two together, the Debtor overstates the IRS claim by $102,480.79.

C.    New York City Department of Finance.

During the time period applicable here, Bankruptcy Code § 101(51D) defined the term "small business debtor" as "a person engaged in commercial or business activities * * * that has aggregate noncontingent *liquidated* secured and unsecured debts as of the date of the petition or the date of the order for relief in an amount not more than $2,000,000 (excluding debts owed to 1 or more affiliates or insiders) * * * ."  11 U.S.C. § 101(51D)(A) (emphasis supplied).

---

[22]    The bar date set by the Court was June 13, 2007 (Docket No. 15).

The Code does not offer a definition of liquidated debt. *See In re Verdunn*, 89 F.3d 799, 802 n.11 (11th Cir. 1996). Black's defines the term as one "whose amount has been determined by agreement of the parties or by operation of law." B. Garner, *Black's Law Dictionary*, at 433 (8th ed. 2004). Similarly, "'courts have generally held that a debt is 'liquidated' * * * where the claim is determinable by reference to an agreement or by a simple computation.'" *In re Mazzeo*, 131 F.3d 295, 304 (2d Cir. 1997) (quoting from 2 L. King, *Collier on Bankruptcy* ¶ 109.06[2][c] (15th ed. rev. 1997)). Conversely, if determination of the amount of a claim requires judgment, discretion or legal interpretation, it is unliquidated. *See In re Elrod*, 178 B.R. 5, 6 (Bankr.,N.D. Okla. 1995).

*Elrod* stands as persuasive authority here. In *Elrod*, the court was called upon to determine whether the debtor was eligible to file a petition for chapter 13 relief under the $250,000 debt ceiling then prescribed by Bankruptcy Code § 109(e). The IRS had moved to dismiss the case, arguing that its filed proof of claim exceeding $650,000 was determinative, despite the fact that some $638,000 of the total claim was listed as an "estimated liability." *Id.* The *Elrod* court disagreed, holding that, under the circumstances, the IRS proof of claim did not control the debtor's eligibility for chapter 13. In reaching this result, the *Elrod* court observed:

> [T]he Court cannot determine the amount of the IRS claim without an evidentiary hearing. At this evidentiary hearing the Court would hear evidence as to income earned by Debtors and deductions claimed. In determining the taxable income of the Debtors, the Court would have to apply various provisions of the Internal Revenue Code. Therefore, the claim of the IRS is not readily determinable by agreement or mathematical computation, but does require the use of judgment, discretion, determination of facts, and construction of the Internal Revenue Code.
>
> The IRS has essentially admitted on their amended proof of claim that its claim is not readily determinable because essentially all the unsecured amount is estimated. If the amount due is estimated, it must be unliquidated and therefore not counted in determining eligibility.

*Id.* at 6-7; *see In re Bohannon*, No. 93-13343, 1993 Bankr. LEXIS 1917, at *5 (Bankr., D. Colo. Aug. 3, 1993) (holding chapter 13 plan not confirmable under section 1325(a)(6) on ground that IRS claim was *estimated* and would not be *liquidated* until debtors filed their income tax return).

This case presents the same situation. In an effort to establish liquidated and non-contingent debt exceeding the statutory ceiling of Bankruptcy Code § 101(51D), the Debtor points to Claim No. 5 filed by the New York City Department of Finance in the amount of $453,676.00 (P-0013). Review of the proof of claim reveals that it is based solely on *estimated taxes*. As in *Elrod*, this estimated tax liability does not constitute a liquidated debt for the purposes of determining status as a small business debtor under section 101(51D).

Moreover, the Debtor has taken an inconsistent position earlier in this case with respect to Claim No. 5. In seeking to extend the period of exclusivity as a small business debtor (Docket No. 20), CCT told this Court that New York City's claim should be reduced substantially, if not expunged altogether:

> The claim filed by the New York City Department of Finance is based upon Commercial Rent tax in the amount of $68,676.00 and General Corporation tax in the amount of $385,000.00. The Debtor is not a New York Corporation, but maintains certain of its operations in New York City at 60 Hudson Street. Therefore, the claim for General Corporation Tax should be expunged in its entirety. The Debtor is reviewing that portion of the claim with respect to Commercial Rent Tax to determine its validity.

*See* P-0006, at 3. Notably, the Debtor has never followed through on its now, two-year old promise of "simultaneously preparing" a motion to object to the New York City claim. *Id.* at 2.

The Debtor's conduct here is significant here in that it establishes the two requisite elements to invoke judicial estoppel. First, in the motion to extend exclusivity, the Debtor represented to the Court that it was a small business debtor, as the relief being sought under Bankruptcy Code

§ 1121(e)(2) is exclusively available to small business debtors. Toward this end, the Debtor specifically represented that three filed claims – by New York City, Zone and Global Crossing – "should * * * be reduced from $1,715,698.00 to approximately $200,000.00." *See* P-00006, at 3.

Second, in granting the Debtor's motion to extend exclusivity as a small business debtor, this Court satisfied the second element of judicial estoppel – adopting the Debtor's position that it was a small business debtor. *See Mitchell v. Washingtonville Central School District*, 190 F.3d 1, 6 (2d Cir. 1999). Applied at bar, the doctrine of judicial estoppel bars the Debtor from taking the opposite position on this Motion to suit the exigencies of the moment. *See Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir.), *cert denied*, 510 U.S. 992, 114 S. Ct. 550, 126 L. Ed. 2d 452 (1993). Having earlier disparaged the bona fides of the New York City claim in representing its status as a small business debtor, the Debtor cannot now be heard to proclaim this sacrosanct.

D.    Virtual Communications.

The Debtor's amended schedules itemize ten claims that allegedly arise from the Debtor's 1999 merger with a company known as Virtual Communications, Inc. (Vlahos 3/23/09 Tr.. 66:14-67:22; 145:10-147:20).[23] These claims aggregate slightly in excess of $65,000. Zone submits that the Virtual Communications claims should not be in included in CCT's pre-petition debt calculation for purposes of determining its status as a small business debtor.  These claims, which the amended schedules list as disputed, were time barred as of the commencement of this case and no proof of claim has ever been filed with respect to any of them.[24]

---

[23]    "Vlahos 3/23/09 Tr. ___" is intended as a reference to the March 23, 2009 deposition of Dean Vlahos on behalf of CCT Communications, Inc., which is reproduced in Global Crossing Exhibit P-0016.

[24]    An expanded discussion of the Virtual Communications claims appears at pp. 3-9 of Zone's earlier memorandum of law dated April 15, 2009 (Docket No. 159). *See also* Zone's Trial Exhibits Z-01 through Z-10.

The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12); *see Steed v. Shapiro (In re Shapiro)*, 180 B.R. 37, 38 (Bankr., E.D.N.Y. 1995). In turn, a "claim" includes the "right to payment." 11 U.S.C. § 101(5)(A); *see In re Boudakian*, 137 B.R. 89, 93 (Bankr., D.R.I. 1992). The Supreme Court has held that a right to payment "is nothing more nor less than an enforceable obligation." *Cohen v. de la Cruz*, 523 U.S. 213, 218, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998) (citation and interior quotation omitted).

These definitions lead to basic working principles. For purposes of the Bankruptcy Code, "[a] debt is incurred when the debtor becomes legally bound to pay." *Alfa Mut. Fire Ins. Co. v. Memory (In re Martin)*, 184 B.R. 985, 991 (M.D. Ala. 1995), *aff'd*, 101 F.2d 708 (11th Cir. 1996) (citations omitted). Conversely, where liability on a claim ceases to exist, such as when discharged in a prior bankruptcy, it is no longer a "debt" within the meaning of the Code. *See Associates Financial Servs. Corp. v. Cowen*, 29 B.R. 888, 895 (Bankr., S.D. Ohio 1983) (a discharged debt, which is not reaffirmed, "is not cognizable as 'debt' in a subsequent proceeding," even though an associated lien may survive); *see also In re McKinstry*, 56 B.R. 191, 193 (Bankr., D. Vt. 1986) (where mortgage debt was discharged in prior bankruptcy, holder of mortgage was not a creditor in subsequent chapter 13 case, since it no longer had any claim under promissory note accompanying the mortgage).

The same principles hold true where an applicable statute of limitations bars enforcement of a claim. Illustrative is *Steed v. Shapiro (In re Shapiro)*, 180 B.R. 37 (Bankr., E.D.N.Y. 1995), in which a former patient of the debtor-podiatrist sought to except from discharge under section 523(a)(6) the patient's claim for sexual battery. *Id.* at 37-38. Although the debtor had been convicted in state court on misdemeanor counts of sexual misconduct and sexual abuse in the third degree, the conviction was later overturned on appeal. *Id.* at 38. The plaintiff also commenced a

pre-petition, medical malpractice action against the debtor, but that was dismissed as time-barred, the court agreeing with the debtor that the gravamen of the action was really assault and battery, to which a one-year statute of limitations applied. The plaintiff argued that the statute of limitations, which the state court had applied, had been revived by virtue of subsequent legislation (CPLR § 213-b) granting crime victims a seven-year period within which to commence civil action against their perpetrators.

Considering these events on the plaintiff's motion for summary judgment in the adversary proceeding, the *Shapiro* court ruled against the plaintiff, finding that the reversal of the debtor's criminal conviction rendered the revival statute inapposite. In reaching this result, the court reasoned that, as a result of the expiration of the civil statute of limitations, the plaintiff had no claim against the debtor, nor was there a debt for purposes of the adversary proceeding:

> [W]e hold that the reversal of the Debtor-Defendant's judgment of conviction renders such conviction a legal nullity and restores the Debtor-Defendant to the position of not having been convicted for purposes of *CPLR § 213-b*, and conclude that:
>
> (1) as of the date of the Dismissal Order, the Plaintiff no longer had a "claim" enforceable against the Debtor-Defendant in state court, and
>
> (2) as a result of the reversal of the Debtor-Defendant's conviction, the Plaintiff's time-barred claim against the Debtor-Defendant is not revived by *CPLR § 213-b*. Consequently, the Plaintiff does not have a "claim" based on the 1988 Incident which is enforceable in state court and therefore, she has neither a "claim" against the Debtor-Defendant, nor is there a "debt" for purposes of this *11 U.S.C. § 523(a)(6)* proceeding.
>
> Since there is no "debt" to except from discharge, the Plaintiff's motion for summary judgment is denied and the Debtor-Defendant's motion for summary judgment is granted.

180 B.R. at 42.

*Shapiro* stands as persuasive and, we submit, controlling authority here. In point of fact, this Court cited *Shapiro* for the proposition that, "[i]n the absence of an enforceable obligation, there is no 'debt' that can be non-dischargeable." *Thompson v. Roland (In re Roland)*, 294 B.R. 244, 249 (Bankr., S.D.N.Y. 2003). While this is not a proceeding to determine dischargeability, the basic rules enunciated in *Shapiro* and *Roland* apply with equal force – where an obligation is unenforceable under the statute of limitations, there is no right to payment and, perforce, no "claim" and no "debt" cognizable under the Bankruptcy Code.

A review of the documentary proof underlying the Virtual Communications claims reveals that they are well beyond the six-year statute of limitations applicable to contract claims in New York[25] and many other jurisdictions, including Connecticut,[26] where the Debtor is headquartered. These purported claims are facially time-barred and may not properly be included in the calculation of debt for purposes of determining small business debtor status under Bankruptcy Code § 101(51D).

The circumstances surrounding the merger also undermine any credible claim that these alleged liabilities legitimately belong in a calculation of whether the Debtor should be regarded as a small business debtor. Although CCT's president, Dean Vlahos, testified at deposition that the Debtor assumed liability for Virtual's obligations in connection with the merger (Vlahos 3/23/09 Tr. 66:14-67:22;145:10-147-20), he was unable to identify any written document explicitly memorializing that alleged agreement. None of the invoices to which the Debtor points were issued or addressed to the Debtor. All are in the name of Virtual Communications, Inc. Moreover, the Debtor's course of conduct following the Virtual Communications merger has hardly been

---

[25] *See* N.Y. C.P.L.R. § 213 (McKinney 2003).

[26] *See* CONN. GEN STAT. ANN. § 52-576 (West 1991).

consistent with an agreement to assume its obligations. In deposition, Mr. Vlahos was unable to point to a single instance in which the Debtor made *any* payment on these liabilities (Vlahos 3/23/09 Tr. 67:24-68:4; 145:10-146:2).

Moreover, each of the Virtual Communications claims are scheduled as disputed. By virtue of that fact, it was incumbent upon each of the putative creditors of the Debtor to file a proof of claim by the bar date in order to vote on a plan or to share in any distribution. *See* FED. R. BANKR. P. 3003(c)(2); *In re Thomson McKinnon Securities*, 125 B.R. 88, 92 (Bankr. S.D.N.Y. 1991) (creditors who failed to file timely proofs of claim "lost their rights to claim property from the debtor"). The Bankruptcy Rules contain provision for the trustee or the debtor to file a proof of claim within 30 days after any bar date. FED. R. BANKR. P. 3004. But the Debtor did not avail itself of that remedy here. The consequence of the omission is additional cause to disregard the scheduled Virtual Communications' claims. *See In re Nutri*Bevco, Inc.*, 117 B.R. 771, 783 (Bankr. S.D.N.Y. 1990) (upholding Fed. R. Bankr. P 3003(c) against a due process attack).

E.    Insider Claims.

Two of the claims contained in the Debtor's schedules belong to "insiders." The claims of insiders are not included in the determination of small business debtor status. 11 U.S.C. § 51D(A). The $1,657.52 claim of Dean Vlahos can be dealt with easily enough. Mr. Vlahos is the sole officer, director and shareholder of the Debtor and qualifies as a "statutory" insider under Bankruptcy Code § 101(31)(B).

Call Center Technologies is also an insider, although that determination requires a bit more analysis. The Code's definitions of insiders are intended to be illustrative, not exhaustive. *In re Krehl*, 86 F.3d 737, 741 (7th Cir. 1996). Referring to the legislative history, the *Krehl* court noted:

> Legislative history suggests that, in addition to the individuals and entities actually named, the term [insider] also encompasses anyone with "a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." S. Rep. No. 989, 95th Cong. 2d Sess., reprinted in 1978 U.S.C.C.A.N. 5787, 5810. In ascertaining insider status, then, courts have looked to the closeness of the relationship between the parties and to whether any transactions between them were conducted at arm's length.

*Id.* at 741-42 (citations omitted).

In a similar vein, in *455 CPW Assocs. v. Greater N.Y. Sav. Bank (In re 455 CPW Assocs.)*, No. 99-5068, 2000 U.S. App. LEXIS 23470, at *16 (2d Cir. Sept. 14, 2000), the court stated that the definition of an insider is to be "applied flexibly."  The Second Circuit then went on to observe that "'[a]n insider who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor.'" *Id.* at 17 (quoting *In re 9281 Shore Road Owners Corp.*, 187 B.R. 837, 853 (E.D.N.Y. 1995) (interior quotation marks and citation omitted)).

To like effect is *Hirsch v. Tarricone (In re A. Tarricone, Inc.)*, 286 B.R. 256 (Bankr., S.D.N.Y. 2002), in which the court explained that the list of so-called "statutory" insiders was not an exhaustive one. *Id.* at 262.  Explaining this point and identifying the criteria that mark non-statutory insiders, Judge Hardin noted:

> Persons specified in the six subdivisions of Section 101(31)(B) are generally referred to as "statutory" insiders.  But in providing that the term insider "includes" the statutory insiders, Congress made clear that "insider" is not limited to these six categories. Thus, the statutory list is not exhaustive, and it is for the courts to define the limits of non-statutory insider status.
>
> In determining whether a person is a non-statutory insider, courts have generally focused on two basic factors: (1) the closeness of the relationship between the debtor and the transferee, and (2)  whether

> the transactions between the transferee and the debtor were conducted at arm's length.

*Id.*; *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 564-65 (Bankr., S.D.N.Y. 2002).

Judged under these standards, there can be little doubt that Call Center is a non-statutory insider of the Debtor. Dean Vlahos is the president and only officer of both entities (Vlahos 3/23/09 Tr. 6:12-17; 21:5-9; 22:2-4). Mr. Vlahos also acts as the sole director of the Debtor and Call Center (Vlahos 3/23/09 Tr. 6:14-17; Vlahos 4/7/09 Tr. 12:6-9; 17:15-20).[27] Mr. Vlahos caused both companies to be incorporated (Vlahos 3/23/09 Tr. 8:13-19; 21:13-15). Both companies share the same office space (Vlahos 3/23/09 Tr. 3:9-4:11).

It is true that the Debtor and Call Center do not have a common ownership. Mr. Vlahos owns all of the outstanding capital stock of the Debtor (Vlahos 3/23/09 Tr. 6:10-11), while his father is Call Center's sole shareholder (Vlahos 3/23/09 Tr. 21:10-12; 21:16-25). However, the elder Vlahos has no day-to-day involvement in Call Center, and his son exercises managerial control over both companies (Vlahos 3/23/09 Tr. 22:18-23:4). Asked later whether his father was aware that Call Center had loaned money to the Debtor, Dean Vlahos testified:

> A. My father really doesn't have anything to do with the day-to-day operations of Call Center Technologies. He is a 74-year-old man that essentially comes by the office every now and then and says hello.
>
> Q. So is the answer to my question no?
>
> A. Yes, the answer to your question is no.

(Vlahos 3/23/09 Tr. 141:6-13.)

---

[27] "Vlahos 4/7/09 Tr. ___" is intended as a reference to the April 7, 2009 deposition of Dean Steven Vlahos on behalf of Call Center Technologies, Inc., which is reproduced in Global Crossing Exhibit P-0018.

Mr. Vlahos's admission is significant. An "insider" of a corporate debtor includes the "person in control of the debtor." 11 U.S.C. § 101(31)(B)(iii). In *ABC Elec. Servs., Inc. v. Rondout Elec., Inc. (In re ABC Elec. Servs., Inc.)*, 190 B.R. 672 (Bankr., M.D. Fla. 1995), the court made the following observation concerning management and control over a corporate debtor:

> Control is to be determined by an examination of the facts and particularly whether or not the facts indicate an opportunity to self-deal or exert more control over the Debtor's affairs than is available to other creditors. Obviously actual management of the Debtor's affairs equals control. Actual management means controlling such things as the Debtor's personnel or contract decisions, production schedules or accounts payable.

*Id.* at 675; *see In re Chas. P. Young Co.*, 145 B.R. 131, 136-37 (Bankr., S.D.N.Y. 1992) ("Actual management of a debtor is control. Actual management means controlling such things as debtor's personnel or contract decisions, production schedules, and accounts payable." (citations omitted)).

An examination of Call Center's $108,467.15 claim against the Debtor only reinforces the conclusion that both the relationship between CCT and Call Center was not that of an ordinary debtor and creditor, and the transactions between them were not at arm's length. *See Hirsch v. Tarricone (In re A. Tarricone, Inc.)*, 286 B.R. 256, 262 (Bankr., S.D.N.Y. 2002). The Call Center Claim is comprised of two components. The first component relates to monies allegedly due and owing from the Debtor under a Colocation License (P-0019) under which the Debtor occupied Call Center's office space in Brookfield, Connecticut, as well as space in a telecommunications switching facility in Manhattan. The second component arises from monies allegedly advanced by Call Center to CCT under a $100,000 revolving line of credit (P-0020).

Dean Vlahos acted for both the Debtor and Call Center in executing the Colocation License (P-0019) and the Line of Credit Agreement (P-0020). There exist no documents evidencing board approvals by either company for these transactions, nor were there any (Vlahos 4/7/09 Tr. 55:7-17;

57:13-58:8).  Mr. Vlahos concedes that he did not discuss these arrangements with his father (Vlahos 3/23/09 Tr. 140:2-6; 140:24-141-13).  Neither did Mr. Vlahos seek independent advice concerning the terms of the Colocation License (Vlahos 4/7/09 Tr. 54:24-55:6).  Asked the same question concerning the line of credit, Mr. Vlahos stated:

> A.      Given that I was an officer of both companies and I am able to make decisions for both of them, it was not necessary or required that I make diligence of myself with paying one company back to the other, no.

(Vlahos 4/7/09 Tr. 57:8-12.)

Simply stated, the facts admit of no other inference but that Mr. Vlahos has controlled and manipulated CCT and Call Center as interchangeable parts.  The relationship between the two companies, as well as the circumstances giving rise to Call Center's purported claim, negates any logical conclusion that the transactions were at an arm's length.  Call Center must be regarded as an insider of the Debtor.  Accordingly, its scheduled claim should be excluded from any calculation of debt in determining small business debtor status.

Summing up, a more accurate calculation of the Debtor's pre-petition debt, given the considerations discussed above, stands at $1,341,253.44, as itemized below:

<u>Claims Register</u>
| | |
|---|---|
| NYS Dep't of Taxation & Finance . . . . . . . . . . . . | $9,337.62 |
| Metcom Network Services . . . . . . . . . . . . . . . . . . . . . | 8,146.90 |
| New York City Dep't of Finance . . . . . . . . . . . . . . . . . . . | 0.00 |
| NYS Workers' Compensation Board . . . . . . . . . . . . | 8,039.17 |
| Zone Telecom  . . . . . . . . . . . . . . . . . . . . . . | 235,000.00 |
| Global Crossing Telecommunications . . . . . . . . . | 1,027,022.00 |
| Connecticut Dep't of Labor . . . . . . . . . . . . . . . . . . . . . . | 166.47 |
| IRS – Department of Treasury . . . . . . . . . . . . . . . . . | <u>11,781.11</u> |

$1,299,493.27

<u>Amended Schedules – Virtual Communications</u>
| | |
|---|---|
| Airborne Express . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $0.00 |
| American Building Maintenance . . . . . . . . . . . . . . . . . . . . | 0.00 |
| AT&T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0.00 |

Bell Atlantic . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0.00
Brown & Welsh, P.C. . . . . . . . . . . . . . . . . . . . . . . . . . . . 0.00
MFS Telecom, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0.00
Minolta Business Systems . . . . . . . . . . . . . . . . . . . . . . . . 0.00
Rubicon Technologies . . . . . . . . . . . . . . . . . . . . . . . . . . . 0.00
St. Paul Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0.00
Zihal Design . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>0.00</u>

0.00

<u>Amended Schedules – Insider Claims</u>
Call Center Technologies . . . . . . . . . . . . . . . . . . . . . . . . $0.00
Dean Vlahos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>0.00</u>

0.00

<u>Amended Schedules – Other Claims</u>
111 Chelsea LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . $9,204.51
Cogent Communications . . . . . . . . . . . . . . . . . . . . . 10,786.77
Federal Express . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,706.83
James A. Karamansis . . . . . . . . . . . . . . . . . . . . . . . . . 2,502.30
Jennifer Pierce . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,165.94
Lambert & Shackman . . . . . . . . . . . . . . . . . . . . . . . 9,028.82
Metcom Network Services . . . . . . . . . . . . . . . . . . . . . 5,250.00
Tier Zero . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,575.00
Time Warner Telecom . . . . . . . . . . . . . . . . . . . . . . . . <u>540.00</u>

<u>41,760.17</u>
<u>$1,341,253.44</u>

## III.   THE RECORD SUPPORTS DISMISSAL OR CONVERSION ON ALTERNATIVE GROUNDS.

This Court need not find that CCT is a "small business debtor" in order to dismiss or convert this case. The undisputed record establishes alternative, statutory "cause" supporting dismissal or conversion under other provisions of Bankruptcy Code § 1112(b)(4).

As a debtor-in-possession, CCT owes a fiduciary duty to its creditors. *See Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 355, 105 S.Ct. 1986, 1994, 85 L.Ed. 2d 372, 382-83 (1985). Seasonable financial disclosure is "high on the list of the fiduciary obligations * * * ." *In re McClure*, 282 B.R. 282, 289 (Bankr. N.D. Ind. 1987); *accord In re Tornheim*, 181 B.R. 161 (Bankr. S.D.N.Y. 1995), *appeal dism'd, Tornheim v. U.S. Trustee (In re Tornheim)*, 95 Civ.

8474 (PKL), 1996 U.S. Dist. LEXIS 1952 (S.D.N.Y. Feb. 23, 1996). In *Tornheim*, this Court observed:

> The filing of the petition gives rise to a fiduciary relationship between the debtor and his or her creditors * * * To reap the benefit of chapter 11, the debtor must pay the price of disclosure; he or she needs to provide financial and other relevant information to the creditors to inform them and the Court about the progress and status of the case.

*Id.* at 164 (citations omitted).

One court has noted that "[t]imely and accurate financial disclosure is the life blood of the Chapter 11 process. *In re Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991). In this regard, the timely filing of monthly operating reports is critical to a debtor-in-possession's discharge of its fiduciary duties to creditors. *See Tornheim*, 181 B.R. at 164. Accordingly, the failure of a debtor-in-possession to file operating reports itself constitutes statutory cause for dismissal or conversion. 11 U.S.C. § 1112(b)(4)(F); *see Tornheim*, 181 B.R. at 164; *Berryhill*, 127 B.R. at 433; *McClure*, 69 B.R. at 289-90.

CCT's track record has been utterly profligate insofar as compliance with the U.S. Trustee's Guidelines is concerned.[28] Those Guidelines require Chapter 11 debtors to file monthly operating reports on the 15th of each month covering the preceding month just ended. In two and one-half years that this case has been pending, CCT has met that filing deadline just once. The other 29 deadlines have come and gone without CCT's compliance, and by a wide margin. CCT has been late in filing operating reports a total of 1,574 days, and its average monthly tardiness stands at 52.5 days, as shown below:

---

[28] *See* Appendix B. The case administration responsibilities of the United States Trustee are enumerated in 28 U.S.C. § 586(a)(3).

| Month | Date Filed[29] | Due Date | Days Late |
|---|---|---|---|
| February 2007 | 05/11/07 | 03/15/07 | 57 |
| March 2007 | 05/11/07 | 04/16/07 | 25 |
| April 2007 | 07/23/07 | 05/15/07 | 69 |
| May 2007 | 07/23/07 | 06/15/07 | 38 |
| June 2007 | 07/23/07 | 07/16/07 | 7 |
| July 2007 | 09/12/07 | 08/15/07 | 28 |
| August 2007 | 09/12/07 | 09/17/07 | (5) |
| September 2007 | 10/19/07 | 10/15/07 | 4 |
| October 2007 | 12/12/07 | 11/15/07 | 27 |
| November 2007 | 12/26/07[30] | 12/17/07 | 9 |
| December 2007 | 06/25/08 | 01/15/08 | 162 |
| January 2008 | 06/25/08 | 02/15/08 | 131 |
| February 2008 | 06/25/08 | 03/17/08 | 101 |
| March 2008 | 06/25/08 | 04/15/08 | 71 |
| April 2008 | 07/01/08 | 05/15/08 | 47 |
| May 2008 | 06/25/08 | 06/16/08 | 9 |
| June 2008 | 07/24/08 | 07/15/08 | 9 |
| July 2008 | 01/28/09 | 08/1k5/08 | 166 |
| August 2008 | 01/28/09 | 09/15/08 | 135 |
| September 2008 | 01/28/09 | 10/15/08 | 105 |
| October 2008 | 01/28/09 | 11/17/08 | 72 |
| November 2008 | 01/28/09 | 12/15/08 | 44 |
| December 2008 | 01/28/09 | 01/15/09 | 13 |
| January 2009 | 03/21/09 | 02/17/09 | 37 |
| February 2009 | 05/22/09[31] | 03/16/09 | 67 |
| March 2009 | 05/26/09 | 04/15/09 | 41 |
| April 2009 | 05/26/09 | 05/15/09 | 11 |
| May 2009 | 06/18/09 | 06/15/09 | 3 |
| June 2009 | Outstanding[32] | 07/15/09 | 62 |
| July 2009 | Outstanding | 08/17/09 | <u>29</u> |
| | | | <u>1,574</u> |

---

[29]    As reflected in the Court's docket, of which judicial notice may be taken.

[30]    Amended report filed 06/25/08.

[31]    Amended report filed 05/26/09.

[32]    Calculated to 09/15/09.

This consistent, and persistent disregard by CCT of its fiduciary to Zone and similarly situated creditors constitutes ample cause for dismissal or conversion. Again, this Court's observations in *Tornheim* are instructive:

> Refusal or inability to provide financial disclosure sounds the death knell of a chapter 11 case. The failure to file monthly operating statements required by the Trustee's operating guidelines, 'whether based on inability to do so or otherwise, undermines the Chapter 11 process and constitutes cause for dismissal or conversion of the Chapter 11 proceedings.' *In re Roma Group, Inc.*, 165 Bankr. 779, 780 (S.D.N.Y. 1994).

181 B.R. at 164 (citations omitted); *see In re All Denominational New Church*, 268 B.R. 536, 538 (B.A.P. 8th Cir. 2001); *In re Berryhill*, 127 B.R. at 433.

To make matters worse, it appears that CCT has failed to pay post-petition taxes. Both the United States[33] and the State of New York[34] have filed administrative expense claims for taxes arising subsequent to the commencement of this case. CCT's failure to stay current in the payment of post-petition taxes stands as independent statutory cause supporting dismissal or conversion. 11 U.S.C. § 1112(b)(4)(I); *see Berryhill v. United States (In re Berryhill)*, 189 B.R. 463, 466-67 (N.D. Ind. 1995).

---

[33]     *See* Claim No. 13-2 (filed July 9, 2009) in the amount of $10,731.31, which amended Claim No. 13-1 in the amount of $10,971.12, filed December 23, 2008. The Court will note that these administrative expense claims represent *unassessed* tax liabilities, due to CCT's failure to file returns. Under the BAPCPA amendments, the failure to file post-petition tax returns itself constitutes cause for dismissal or conversion. 11 U.S.C. § 1112(b)(4)(I); *see* 7 COLLIER ON BANKRUPTCY (15th ed. rev.) ¶ 1112.04[5][k], at 1112-47.

[34]     *See* Claim 14-1 filed on April 20, 2009 in the amount of $469.38.

<u>CONCLUSION</u>

The record, viewed in a reasonable view, demonstrates that the Debtor's pre-petition debt was significantly less than the $2 million ceiling applicable to determination of CCT's status as a small business debtor. Indisputably, CCT is a small business debtor. Its failure to confirm a plan of reorganization within the time constraints prescribed by Bankruptcy Code § 1129(e) constitutes statutory "cause" under section 1112(b)(4)(J). Likewise that circumstance mandates the dismissal or conversion of this chapter 11 case. 11 U.S.C. § 1112(b)(1). Alternatively, cause for dismissal or conversion exists as a result of the Debtor's consistent pattern of disregard of its fiduciary duty to creditors, grounded in a deliberate failure to file timely operating reports and to pay post-petition taxes. 11 U.S.C. § 1112(b)(4)(F) & (I).

For all these reasons, Zone requests that the Court make and enter an order: (i) dismissing this chapter 11 case; (ii) alternatively, converting it to a case under chapter 7; and (iii) awarding Zone such other and further relief as this Court may deem just and proper.

Dated: White Plains, New York
       September 15, 2009

                              BLEAKLEY PLATT & SCHMIDT, LLP
                              *Attorneys for Zone Telecom, Inc.*

                    By: _____/s/ John I. O'Neill_____
                              John I. O'Neill
                      One North Lexington Avenue
                      White Plains, New York 10601
                      (914) 949-2700