UNITED STATES BANKRUPTCY COURT      **FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                  :
In re:                                  :      Chapter 11
                                  :
CCT COMMUNICATIONS, INC.,        :      Case No. 07-10210 (SMB)
                                  :
                    Debtor.         :
                                  :
-------------------------------------------------------------x

## POST-TRIAL FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

**A P P E A R A N C E S :**

ROSEN & ASSOCIATES, P.C.
Attorneys for the Debtor and
  Debtor in Possession
747 Third Avenue
New York, New York 10017-2803

      Sanford P. Rosen, Esq.
          Of Counsel

DUANE MORRIS LLP
Special Litigation Counsel for Debtor and
  Debtor in Possession
1540 Broadway
New York, New York 10036-4086

      Glenn B. Manishin, Esq.
          Of Counsel

LATHAM & WATKINS LLP
Attorneys for Global Crossing Telecommunications, Inc.
885 Third Avenue
New York, New York 10022-4802

      Robert J. Rosenberg, Esq.
      James E. Brandt, Esq.
          Of Counsel

BLEAKLEY PLATT & SCHMIDT, LLP
Attorneys for Zone Telecom, Inc
One North Lexington Avenue
White Plains, New York 10601

      John I. O'Neill, Esq.
          Of Counsel

UNITED STATES TRUSTEE
33 Whitehall Street – 21st Floor
New York, New York 10004

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge:**

      Global Crossing Telecommunications, Inc. ("Global Crossing"), a creditor of the debtor

CCT Communications, Inc. ("CCT" or the "Debtor") moved to dismiss this chapter 11 case, and

another creditor, Zone Telecom, Inc. ("Zone"), joined in the motion. The disposition of the

motion turns on whether the CCT is a small business debtor under 11 U.S.C. § 101(51D).

      The Court conducted a two day evidentiary hearing, and now concludes that CCT is

judicially estopped from taking the position in this proceeding that it is not a small business

debtor. Accordingly, the case will be dismissed, but the Court will retain jurisdiction over the

adversary proceeding between CCT and Global Crossing as well as any fee applications by

Court-appointed professionals.

## BACKGROUND[1]

**A.**     **Introduction**

      At all relevant times, CCT, a Delaware corporation, purchased telecommunications

services from Global Crossing, and resold those services to third parties. CCT and Global

---

[1]       The following conventions are used in citing to the trial record. The daily transcript is cited by date and page. For example, "9/16/09 Tr. 10" refers to page 10 of the September 16, 2009 transcript. "GCX" refers to Global Crossing's trial exhibits and "DX" refers to the Debtor's trial exhibits.

Crossing are parties to an adversary proceeding (the "Adversary Proceeding") relating to their contract. See Global Crossing Telecommunications, Inc. v. CCT Communications, Inc. (In re CCT Communications, Inc.), Adv. Proc. No. 07-1942, 2008 WL 2705471 (Bankr. S.D.N.Y. July 2, 2008).

CCT filed a chapter 11 petition in this Court on January 29, 2007 (the "Petition Date"). At the time, Dean Vlahos ("Vlahos") was the Debtor's sole shareholder, president, secretary and treasurer. (9/16/09 Tr. 35.) Vlahos was and remains the sole officer and director of Debtor, (9/16/09 Tr. 113, 24; 9/21/09 Tr. 14), and executed the petition ("Original Petition") and original schedules ("Original Schedules") as the Debtor's president. (See GCX 1.)

CCT was required to "state in the petition whether the debtor is a small business debtor." FED. R. BANKR. P. 1020(a). To facilitate the statement, the petition (Official Form No. 1) includes two boxes on the first page. One box indicates that the debtor is a small business debtor and the other indicates that it is not. Vlahos checked the box indicating that CCT was not a small business debtor. (GCX 1.)

Vlahos checked the wrong box. At the time, the Bankruptcy Code stated, with certain inapplicable exceptions, that a debtor with aggregate liquidated, non-contingent secured and unsecured debts of not more than $2 million was a "small business debtor." See 11 U.S.C. § 101(51D)(A).[2] "Disputed" debts count toward the threshold provided that they are liquidated and non-contingent. The Original Schedules listed total liquidated, non-contingent debts in the sum of $1,028,249.64 as follows:

---

[2]    The threshold has since been increased to $2,190,000, but the increase does not apply in this case.

| Creditor | Amount |
|---|---|
| Connecticut Department of Labor | 162.91 |
| Federal Express | 1,500.00 |
| Global Crossing Telecommunications, Inc.[3] | 784,221.73 |
| Metcom Network Services Inc. | 5,250.00 |
| Tier Zero | 1,575.00 |
| Time Warner Telecom | 540.00 |
| Zone Telecom, Inc. | 235,000.00 |
| **Total** | **1,028,249.64** |

(GCX 1.)  CCT clearly fell within the definition of a small business debtor, and Vlahos should have checked the other box.

On April 27, 2007, CCT filed an amended bankruptcy petition ("Amended Petition") and amended schedules ("Amended Schedules").  The Amended Schedules listed aggregate debts of $1,292,507.62, (GCX 2), still well below the $2 million threshold, and this time, Vlahos checked the correct box on the Amended Petition.  The reasons for the difference were several.  Among them, CCT added a group of creditors, holding disputed claims in the aggregate sum of $65,497.44, with notations that the claims related to "Virtual Communications."[4]  Virtual Communications had merged into CCT in 1999.  The "Virtual Communications" claims predated the merger, and had never been paid.  In addition, CCT listed a debt of $108,487.15 owed to Call

---

[3]     CCT listed the Global Crossing debt as disputed.

[4]     The "Virtual Communications" creditors included Airborne Express, American Building Maintenance, A T & T, Bell Atlantic, Brown & Welsh, P.C., MFS Telecom, Inc., Minolta Business Systems, Rubicon Technologies & Telecommunications, Inc., St. Paul Insurance and Zihal Design.

Center Technologies, Inc. ("Call Center"), a corporation wholly owned by Vlahos's father, Steven Vlahos ("Steven").

On May 8, 2007, the Court signed an order fixing the deadline for filing claims. (<u>Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof</u>, dated May 8, 2007 ("<u>Bar Date Order</u>")(ECF Doc. # 15).) The Bar Date Order gave pre-petition creditors until June 13, 2007 to file claims and governmental units until July 30, 2007 to file claims. Consistent with Rule 3003(c)(2) of the Federal Bankruptcy Rules,[5] the Bar Date Order provided that "all holders of claims that fail to comply with this Order by timely filing a proof of claim in appropriate form shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."

## B. The Exclusivity Motion

Section 1121 of the Bankruptcy Code, which relates to exclusivity, distinguishes between small business debtors and non-small business debtors.[6] Under 11 U.S.C. § 1121(b), the non-

---

[5]     Rule 3003(c)(2) provides that is listed as disputed must file a claim by the bar date, and "any creditor that fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."

[6]     Section 1121 states in relevant part:

(b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

. . . .

(d)(1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

(2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter. . . .

. . . .

(e) In a small business case –

(1) only the debtor may file a plan until after 180 days after the date of the order for relief, unless that period is - (A) extended as provided by this subsection, after notice and a hearing; or (B) the court, for cause, orders otherwise;

small business debtor generally has the exclusive right to propose a plan during the first 120 days following the order for relief (i.e., the petition date). The Bankruptcy Code grants the small business debtor the exclusive right to propose a plan during the first 180 days following the order for relief. 11 U.S.C. 1121(e). Any debtor can seek to extend the exclusive period for cause show. The non-small business debtor must make the motion before exclusivity expires. 11 U.S.C. § 1121(d)(1). In the case of the small business debtor, the order extending exclusivity must be signed before exclusivity expires. 11 U.S.C. § 1121(e)(3)(C). Finally, the small business debtor faces a different outside limit. The Court cannot extend exclusivity for the non-small business debtor beyond 18 months from the order for relief. 11 U.S.C. § 1121(d)(2)(A). The small business debtor must file its plan and disclosure statement, if any, not later than 300 days after the order for relief. 11 U.S.C. § 1121(e)(2).

As a small business debtor, CCT's initial exclusivity period was due to expire on July 30, 2007. On July 13, 2007, CCT moved to extend its period of exclusivity (the "Exclusivity Motion") (GCX 6.) CCT reaffirmed its status as a small business debtor, (id. at 4-5), an essential element of its Exclusivity Motion. If CCT was not a small business debtor, its exclusivity period would have expired on May 29, 2007, and its Exclusivity Motion would have been made too late. The Court granted the Exclusivity Motion and extended exclusivity until November 26, 2007, the last date permitted under the small business debtor provisions of 11 U.S.C. § 1112(e).

---

(2) the plan and a disclosure statement (if any) shall be filed not later than 300 days after the date of the order for relief; and

(3) the time periods specified in paragraphs (1) and (2), and the time fixed in section 1129(e) within which the plan shall be confirmed, may be extended only if – (A) the debtor, after providing notice to parties in interest(including the United States trustee), demonstrates by a preponderance of the evidence that it is more likely than not that the court will confirm a plan within a reasonable period of time; (B) a new deadline is imposed at the time the extension is granted; and (C) the order extending time is signed before the existing deadline has expired.

(GCX 7.)  The order approving the extension expressly invoked § 1121(e) as the statutory authority.  (Id.)

**C.     The Plan**

CCT filed its Plan of Reorganization of CCT Communications, Inc. ("Plan") (ECF Doc. # 47) on the last possible day, November 26, 2007.  The Debtor intended to fund the plan distributions, at least in part, with the proceeds generated through the Adversary Proceeding and a separate adversary proceeding to be brought against Zone.  (Plan at § 6.4.)  Furthermore, one of the conditions to the occurrence of the Effective Date was the resolution by final order of the two adversary proceedings.  (Plan at § 11.2)

The filing of the Plan triggered a new deadline.  Under 11 U.S.C. § 1129(e), CCT had to confirm the Plan within 45 days, or by January 10, 2008, unless the Court extended the deadline.[7]  On December 7, 2007, CCT moved for an extension of its 45 day deadline.  (GCX 8.) The Debtor once again affirmed its status as a small business debtor.  (See id. at ¶¶ 11-12, 14.) The Court denied the Plan Extension Motion, (Order Denying Debtor's Motion to Extend the Time Within Which to Confirm Its Plan of Reorganization, dated Dec. 26, 2007)(ECF Doc. # 80), and CCT never confirmed the Plan or any plan.

**D.     The Motion to Dismiss**

On February 13, 2009, Global Crossing moved under 11 U.S.C. § 1112(b)(1) to dismiss or convert the Debtor's chapter 11 bankruptcy case for failure to timely confirm a plan.  (Notice

_____

[7]     Section 1129(e) states:

   In a small business case, the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3).

Case Pursuant to 11 U.S.C. § 1112(b)(1), dated Feb. 13, 2009 ("Motion to Dismiss") (ECF Doc. # 145).) Zone joined in the motion. (Response of Zone Telecom, Inc. in Support of Motion by Global Crossing Telecommunications, Inc. for an Order Dismissing or Converting this Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b)(1), dated Feb. 24, 2009)(ECF Doc. # 152.) CCT filed opposition to the Motion to Dismiss, asserting for the first time that it was not a small business debtor. (See Debtor's Opposition to Motion of Global Crossing Telecommunications, Inc. to Dismiss or Convert Chapter 11 Case Pursuant to 11 U.S.C. Section 1112(b)(1), dated Mar. 2, 2009)("CCT Original Memo") (ECF Doc. # 154.) The Debtor simultaneously filed a second amended bankruptcy petition, and checked the box designating itself a non-small business debtor. (ECF Doc. # 153.) The Debtor did not, however, file amended schedules.

The Court scheduled a trial to resolve whether CCT was a small business debtor. At the beginning of the trial on September 16, 2009, Global Crossing presented a chart (the "Chart") that summarized the non-insider liquidated, non-contingent debt owed or allegedly owed by the Debtor. The Chart first identified eight creditors who had filed proofs of claim: [8]

| Creditor | Claim Amount |
|---|---|
| New York State Dep't of Taxation & Finance | 9,337.62 |
| Metcom Network Services | 8,146.90 |
| New York City Dep't of Finance | 453,676.00 |
| New York State Worker's Comp. Board. | 8,039.17 |
| Zone | 235,000 |

---

[8]    If a scheduled creditor filed a proof of claim for different amount, Global Crossing included the amount specified in the proof of claim. (9/16/09 Tr. 17:11-20.)

| | |
|---|---|
| Global Crossing | 1,027,022.00 |
| Connecticut Dep't of Labor | 166.47 |
| IRS[9] | 11,781.11 |
| **Total** | **1,753,169.27** |

In addition, the following claims were scheduled in the Amended Schedules, but no proof of claim was ever filed:

| Creditor | Scheduled Amount |
|---|---|
| 111 Chelsea LLC | 9,204.51 |
| "Virtual Communications" Creditors | 65,497.34 |
| Call Center | 108,487.15 |
| Cogent Communications | 10,786.77 |
| Federal Express | 1,706.83 |
| James H. Karamansis | 2,502.30 |
| Jennifer Pierce | 1,165.94 |
| Lambert & Shackman | 9,028.82 |
| New York State Worker's Comp. Board – Disabilities Division | 524.50 |
| Tier Zero | 1,575.00 |

---

[9]     The debtor initially disputed the amount of the IRS claim. The IRS first filed claim no. 8 in the amount of $11,781.11covering corporate income taxes, including pre-petition interest and penalties, for 2002, 2004 and 2006. On or about February 11, 2008, the IRS filed claim no. 11 in the amount of $102,480.79. It included the aforementioned corporate income taxes and interest (but not the penalties), and the balance of the claim covered unassessed withholding, FICA and FUTA taxes for which no returns had been filed. Thereafter, the IRS filed amended claim no. 12 on September 5, 2008. Claim no. 12 omitted the unassessed payroll and FUTA taxes and limited the claim to the corporate income taxes and pre-petition interest and penalties asserted in its original proof of claim. I infer from the foregoing that the IRS intended to reinstate its original claim, and CCT apparently agrees. It filed amended schedules on September 18, 2009, listing a disputed IRS debt of $11,781.11.

| Time Warner Telecom | 540.00 |
|---|---:|
| **Total** | **211,019.16** |

The aggregate debts totaled $1,964,188.43, still below the $2 million threshold. The Debtor disputed the accuracy of only two entries in the Chart -- the IRS claim, discussed in the preceding footnote, and the Global Crossing claim. (9/16/09 Tr. 15-16, 21-22.) CCT contended that the Global Crossing claim should be increased by $30,440. (See 9/16/09 Tr. 15-16, 21-22.) Even if the Global Crossing claim was increased by the disputed amount, the aggregate debt still fell below $2 million.

CCT's counsel conceded that the remaining claims were correctly summarized in the Chart. (See 9/16/09 Tr. 24.) Accordingly, the Court concluded that Global Crossing had carried its burden of going forward, and had demonstrated that CCT was a small business debtor; the burden shifted to CCT "to show either that you're not or that even if you are there are reasons why the case shouldn't be dismissed or converted or possibly a trustee appointed because of all the exceptions in the statute.' (9/16/09 Tr. 26.) CCT agreed. (Id.)

The Debtor's defense ultimately centered on two contentions. First, in April 2009, Vlahos transferred 20% of his CCT voting stock to Call Center, and on September 15, 2009, Call Center filed a chapter 11 petition in this Court. According to CCT, Call Center and CCT were affiliated debtors, and their aggregate debts exceeded $2 million. As discussed below, CCT contended that as a result of the aggregation of their debts, it no longer qualified as a small business debtor under § 101(51D).

Second, even without Call Center, CCT's debts exceed $2 million. After the first day of the trial had concluded, CCT filed its second amended schedules ("Second Amended

Schedules") listing liquidated, non-contingent debts totaling $2,065,201.57. (See GCX 36.) The

principal differences between the debts identified in the Chart and the Second Amended

Schedules were the following:

| Creditor | The Chart | Second Amended Schedules |
|---|---|---|
| 111 Chelsea, LLC | 9,204.51 | 53,017.84 |
| Global Crossing | 1,027,022.00 | 1,057,462.00 |
| Bell Atlantic | 572.88 | 1,915.00 |
| Cogent Communications | 10,786.77 | 25,254.24 |
| MFS Telecom | 38,623.22 | 36,071.63 |
| Minolta Business Systems | 1,992.82 | 15,440.51 |
| | **1,088,202.20** | **1,189,161.22** |

## DISCUSSION

**A.     Introduction**

The Motion to Dismiss is governed by 11 U.S.C. § 1112(b) , which provides in pertinent

part:

> (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.
>
> (2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that -
>
> > (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A) - (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court.

. . . .

(4) For purposes of this subsection, the term "cause" includes -

. . . .

(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court.

Parsing the language of § 1112(b), the Court must first determine whether cause exists to dismiss or convert. Global Crossing and Zone maintain, relying on § 1112(b)(4)(J), that CCT is a small business debtor, and failed to confirm a plan within 45 days after it was filed as required by 11 U.S.C. § 1129(e). It is undisputed that CCT failed to meet the 45 day requirement. If the Court concludes that CCT is a small business debtor, Global Crossing has established cause to dismiss or convert, "whichever is in the best interests of the creditors and the estate." If cause exists, the Court <u>must</u> dismiss or convert unless it determines that one or more of three limited exceptions exist, in which case the decision to convert or dismiss is committed to the Court's discretion. These exceptions are discussed later in this opinion.

The Court received a substantial amount of testimony and documentary evidence regarding many of the claims that appeared in CCT's schedules and on which CCT based its opposition. It is unnecessary, however, to decide on a claim by claim basis whether the Debtor's liquidated, non-contingent claims aggregate more than $2 million because the Debtor is judicially estopped from asserting that they do.

## B.      Judicial Estoppel

"Judicial estoppel is designed to prevent a party who plays fast and loose with the courts from gaining unfair advantage through the deliberate adoption of inconsistent positions in

successive suits." Wight v. BankAmerica Corp, 219 F.3d 79, 89 (2d Cir. 2000); accord Zedner

v. United States, 547 U.S. 489, 504 (2006); New Hampshire v. Maine, 532 U.S. 742, 749 (2001);

Bates v. Long Island R.R. Co., 997 F.2d 1028, 1037 (2d Cir. 1993). The doctrine serves two

purposes: "to preserve the sanctity of the oath by demanding absolute truth and consistency in all

sworn positions," and to "protect judicial integrity by avoiding the risk of inconsistent results in

the two proceedings." Bates, 997 F.2d at 1037-38.

The application of judicial estoppel is discretionary, and three factors generally inform

the Court's discretion. First, the party's position must be "clearly inconsistent with its earlier

position;" second, the party must have "succeeded in persuading a court to accept that party's

earlier position;" and third, "the party seeking to assert an inconsistent position would derive an

unfair advantage or impose an unfair detriment on the opposing party if not estopped." New

Hampshire v. Maine, 532 U.S. at 750-51; accord Zedner v. United States, 547 U.S. at 504; see

Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 148 (2d Cir. 2005). The Second Circuit has

taken a fairly narrow view of the doctrine, stating that judicial estoppel is limited "to situations

where the risk of inconsistent results with its impact on judicial integrity is certain." Uzdavines

v. Weeks Marine, Inc., 418 F.3d at 148 (quoting Simon v. Safelite Glass Corp., 128 F.3d 68, 72

(2d Cir. 1997)).

Judicial estoppel does not apply to different proceedings in the same action. In re

Omnicom Group, Inc. Secs. Litig., No. 02 Civ. 4483 (WHP) (MHD), 2007 WL 2376170 at *6

(S.D.N.Y. Aug. 10, 2007). Consequently, while judicial estoppel applies in bankruptcy, it is

unclear whether it applies to different proceedings within the same bankruptcy case. Compare

Breeden v. Kirkpatrick & Lockhart, LLP, 268 B.R. 704, 711 n.5 (S.D.N.Y. 2001)(trustee

judicially estopped in subsequent action from taking position inconsistent from the one he

successfully took during prior motion for substantive consolidation), aff'd, 336 F.3d 94 (2d Cir. 2003) and McCarron v. Andrews (In re Andrews), 385 B.R. 496, 502 (Bankr. D. Conn. 2008)(judicial estoppel applies where party makes inconsistent statements in the same action) with Geltzer v. Helen-May Holdings LLC (In re Kollel Mateh Efraim, LLC), Adv. Proc. No. 04-4545, 2009 WL 2929430, at *9 (Bankr. S.D.N.Y. Aug. 18, 2009)(concluding that judicial estoppel does not apply to inconsistent positions in the same bankruptcy case.)  Although I concluded in Kollel Mateh Efraim that judicial estoppel does not apply in subsequent proceedings in the same bankruptcy case, the conclusion was overly broad.

A bankruptcy case is distinct from the separate proceedings brought within the case. Porges v. Gruntal & Co. (In re Porges), 44 F.3d 159, 162 n.2 (2d Cir. 1995)("[A]n adversary proceeding and the companion bankruptcy case constitute two distinct proceedings. These distinctions serve to support a bankruptcy court's exercise of jurisdiction over an adversary proceeding following dismissal of the underlying bankruptcy case.")  A trustee may, in this regard, commence numerous adversary proceedings to avoid preferential or fraudulent transfers. Similarly, the trustee may commence a multitude of contested matters objecting to claims or assuming or rejecting executory contracts and unexpired leases.  These proceedings may share common issues and, in the case of contested matters, be resolved in a single order, but they are entirely separate from one another.  Outside of bankruptcy, a party that successfully takes a position in a civil litigation can be judicially estopped from taking an inconsistent position in a subsequent civil litigation.  There is no cogent reason to treat separate bankruptcy proceedings as one case, particularly since they are, themselves, separate from the case, and preclude the application of judicial estoppel under circumstances where it would apply outside of bankruptcy.

In re Save our Springs (S.O.S.) Alliance, Inc., 393 B.R. 452 (Bankr. W.D. Tex. 2008), aff'd No. 08-cv-727 (LY)(ECF Doc. # 20)(W.D. Tex. Sept. 29, 2009), which involved facts virtually identical to the case before me, illustrates this point. There, the debtor filed a chapter 11 case, and designated itself as a small business debtor. After the debtor failed to confirm its plan a creditor moved to dismiss the case on several grounds, including that the debtor had failed to meet the deadlines set forth in 11 U.S.C. §§ 1121(e)(2) and 1129(e) for confirming a plan. Id. at 456. Nine days before the hearing on the motion to dismiss, the debtor amended its petition, designated itself as a non-small business debtor, and argued that its designation was conclusive.[10] Id.

The court ruled that the debtor was judicially estopped from taking the position that it was a small business debtor. Under Fifth Circuit law, judicial estoppel applied where the party took a position that was clearly inconsistent with a previous one, a court accepted the previous position, and the non-disclosure was not inadvertent. Id. at 458 (quoting Kane v. Nat'l Union Fire Ins. Co., No. 07-30611, 2008 WL 2721157, at *3 (5th Cir. July 14, 2008). The debtor had taken clearly inconsistent positions by first contending that it was a small business debtor and then arguing that it was not.

The Court had also accepted the debtor's earlier position that it was a small business debtor. It allowed the debtor to combine its plan and disclosure statement into one document, a procedure that was only available to small business debtors under 11 U.S.C. § 1125(f). S.O.S., 393 B.R. at 458-59. In addition, the court expedited the hearing to approve the disclosure

---

[10] Federal Bankruptcy Rule 1009(a) allows a debtor to amend its petition, schedules, lists and statements "as a matter of course" at any time before the case is closed. Rule 1020 (a) states that "the status of the case as a small business case shall be in accordance with the debtor's statement under this subdivision, unless and until the court enters an order finding that the debtor's statement is incorrect."

statement and the confirmation of the plan "<u>only</u> because of the Debtor's representation that it was a small business debtor." <u>Id.</u> at 459 (emphasis in original). In fact, "virtually <u>every</u> action taken by the Court in this case since the Plan was filed has been on an expedited basis, driven by the expedited schedule for plan confirmation provided under the Bankruptcy Code for small business debtors." <u>Id.</u> (emphasis in original).

Finally, the debtor's original designation as a small business debtor was not inadvertent or mistaken. The debtor relied on that status on numerous occasions, and its "actions indicate its having chosen small business debtor status at the commencement of the case was conscious and intentional and not inadvertent." <u>Id.</u> at 461. The debtor, in this regard, had access to all of the facts relevant to ascertain the correct information. <u>Id.</u> at 461-62. Lastly, the debtor had a motive to conceal the truth in order to obtain the advantages available to the small business debtor. <u>Id.</u> at 462.

The elements of judicial estoppel are also present in this case. CCT took the position in prosecuting the Exclusivity Motion that it was a small business debtor. [11] Although CCT contends that this was a legal position and judicial estoppel only applies to factual positions, the argument is disingenuous. CCT's small business designation was based on its <u>factual</u> position that its aggregate debts were less than $2 million. CCT is now taking a position that it is not a small business debtor, and this is clearly inconsistent with its earlier position.

In addition, the Court adopted CCT's position that it was a small business debtor when it granted CCT's Exclusivity Motion, citing § 1121(e) as the source of its authority. The

---

[11] It took the position for the second time in December 2007, when it sought additional time – beyond the 45 day period – to confirm its plan.

exclusivity period applicable to a non-small business debtor had already expired by the time

CCT made the Exclusivity Motion, and if CCT were not a small business debtor, the Court

would have been compelled to deny it.  See ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON

BANKRUPTCY ¶ 1121.06, at 1121-7 n.5 (15th ed. rev. 2009)("COLLIER") ("There can be no

extension after the period has expired.")  In short, CCT's status as a small business debtor was

the sine qua non of its successful Exclusivity Motion.

Finally, the equities weigh in favor of applying judicial estoppel.  The extension of

exclusivity allowed CCT to control the plan process, and prevent other parties in interest,

including Global Crossing and Zone, from filing and confirming their own plans if they chose to

follow that route.  Having successfully urged its small business debtor status to gain a benefit in

the plan process, CCT now seeks to reverse course to avoid the burdens of the plan process

associated with small business debtor status.

The Debtor has also engaged in tactics that are questionable and a transaction that was an

outright sham to bolster its inconsistent position.  After the first day of trial, CCT filed the

Second Amended Schedules listing its increased debt.  The changes between the Amended

Schedules and the Second Amended Schedules included the following:

| Creditor | First Amended Schedules | Second Amended Schedules |
|---|---|---|
| 111 Chelsea, LLC | 9,204.51 | 53,017.84 |
| Bell Atlantic | 572.88 | 1,915.00 |
| Cogent Communications | 10,786.77 | 25,254.24 |
| Minolta Business Systems | 1,992.82 | 15,440.51 |
| | **22,556.98** | **95,627.59** |

The amendments did not serve any legitimate bankruptcy purpose. Each of these claims had been scheduled as disputed, and none of these creditors had filed a proof of claim. Consequently, they were no longer creditors for purposes of voting or distribution. FED. R. BANKR. P. 3003(c)(2). Increasing their scheduled disputed claims had no affect on the bankruptcy case. Rather, Vlahos increased the amount of these disputed claims in the Second Amended Schedules to strengthen CCT's opposition to the motion to dismiss. CCT then sprang the Second Amended Schedules on Global Crossing and Zone after the trial had begun although Vlahos possessed the information needed to file the Second Amended Schedules well before then.

Nor do the facts suggest that Vlahos was motivated by any desire to ensure the schedules were correct. He contacted the creditors after the bar date had passed -- and only after Global Crossing made the Motion to Dismiss -- to obtain evidence that their disputed claims might be larger. For example, the document that CCT offered to support the increase in 111 Chelsea disputed debt to $53,017.84 included a February 17, 2009 email from the 111 Chelsea and a February 17, 2009 computer run of the debtor's account. (See DX G.) Similarly, the document offered to support the increased claim owed to Bell Atlantic included a March 6, 2009 letter from Verizon, Bell Atlantic's successor, to Vlahos, stating that the outstanding bill (from 1999) in the name of Virtual Commun Inc. [sic] for the sum of $1,191.66 could be paid in person at any payment location. (DX K.) Lastly, the information supporting the increased Cogent Communication ("Cogent") claim was acquired from a March 16, 2009 email received from DeMara Richardson at Cogent. (DX 7.) If Vlahos were so interested in correct schedules, he

would have conducted his investigation at the beginning of the case. Its timing reflects its obvious purpose.

The facts surrounding Vlahos's transaction with Call Center are more egregious. The term "small business debtor" "does not include any member of a group of affiliated debtors that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $2,000,000 (excluding debt owed to 1 or more affiliates or insiders)." 11 U.S.C. § 101(51D)(B). In other words, affiliated debtors aggregate their non-insider, non-affiliate liquidated non-contingent debts. If the aggregated amount exceeds $2 million, neither debtor is considered a small business debtor even though each debtor might be if treated separately. An "affiliate" includes an entity that owns 20% of the outstanding voting securities of a debtor. 11 U.S.C. § 101(2).

Call Center was not an affiliate of CCT on the Petition Date. At that time, Vlahos owned 100% of the outstanding CCT stock, and his father, Steven, owned 100% of the outstanding shares of Call Center. (9/16/09 Tr. 92-93; 9/21/09 Tr. 15.) Steven, however, had no day-to-day involvement in Call Center – his son exercised managerial control over both companies. (9/21/09 Tr. 17.) Dean Vlahos was the chief executive officer of both Debtor and Call Center, (9/21/09 Tr. 11:7-10), and both companies operated out of the same office. (9/21/09 Tr. 12.) In addition, Vlahos transferred funds between the companies' bank accounts, (9/21/09 Tr. 16), and personally loaned money to Call Center. (9/21/09 Tr. 18.)

On April 30, 2009 – more than two years after the Petition Date and two months after the filing of the Motion to Dismiss -- Vlahos engineered a series of sham transactions to make CCT an affiliate of Call Center. Call Center purported to sell a trademark and four internet domain names to Vlahos personally in exchange for a $50,000 one-year, interest-free note, forgiveness of

"over $100,000" in alleged debts owed by Call Center to Vlahos, and 20 of Vlahos's 100 shares of stock in the Debtor. (9/16/09 Tr. 94-95; 9/21/09 Tr. 28, 73.) Vlahos personally drafted the bill of sale for the transaction and signed the bill of sale three times: once on behalf of himself, once on behalf of Debtor, and once on behalf of Call Center. (9/21/09 Tr. 28-29.) Vlahos testified that he "overpaid" for the trademark and domain names as a precaution against the sale later being challenged by "somebody" claiming he "didn't transfer … sufficient value to Call Center." (9/21/09 Tr. 44-45.)

Call Center was still not yet a debtor, so its debts did not count even under CCT's theory. However, on September 15, 2009, one day before the trial in this matter, Call Center filed a chapter 11 petition. Vlahos hired Call Center's attorney. (9/21/09 Tr. 11:24-12:3.) CCT then argued that the new debtor's debts should be aggregated with CCT's, and because those debts exceeded $2 million, CCT was not a small business debtor.

Vlahos bristled at the suggestion that the transaction was designed to make CCT and Call Center affiliates. (9/16/09 Tr. 93; 9/21/09 Tr. 45.) He implied that the transfer had nothing to do with the Motion to Dismiss, and that the amount of stock involved in the transfer (Vlahos represented both sides) was purely coincidental:

> **THE COURT:** Why did you transfer twenty percent as opposed to 19 or 21?
>
> **A:** Well, I didn't want to transfer a majority interest and it didn't seem that …
>
> **THE COURT:** So why didn't you transfer 25 or 15?
>
> **A:** It sounds like too much.
>
> **THE COURT:** How about 15?
>
> **A:** That's not enough.

(9/21/09 Tr. 44.)

I find Vlahos' testimony disingenuous and false. CCT, through Vlahos, has played "fast and loose" with the Court to circumvent a prior position and gain an advantage over Global Crossing and Zone. The transaction was a sham, and its sole purpose was to manipulate CCT's status as a non-small business debtor in order to defeat the Motion to Dismiss. Accordingly, the equities weigh against CCT.

## C. CCT Opposition

CCT has made various arguments in opposition that center on a common theme: no equitable doctrine can prevent the Debtor from correctly designating its status. A debtor has a statutory duty to designate whether it is a small business debtor, FED. R. BANKR. P. 1020 (a), and equitable doctrines that prevent the debtor from correcting the designation violate public policy. (CCT Communications, Inc.'s Post-Trial Memorandum of Law, dated Oct. 10, 2009 ("CCT Memo"), at 50-53)(ECF Doc. # 225.) In addition, the Court cannot ignore the statutory definition of "small business debtor," or that the debtor's status may change during the case. (Id. at 53-55.) Furthermore, the Court has an independent duty to determine whether CCT is a small business debtor under the statutory definition.[12] (Id. at 55-56.)

Judicial estoppel does not prevent CCT from amending its petition or schedules, or changing its designation. But its correct status is not the issue, as the S.O.S. court explained in rejecting the same argument:

> The "truth" or "error" of whether the Debtor is, in fact and in law, a small
> business debtor is not material to a determination of the question of whether it

---

[12] CCT also maintains that even an erroneous designation governs the case unless and until the court corrects it, and the correction only applies prospectively. (CCT Memo at 58.) The argument is a curious one given the circumstances of the case. CCT changed its designation to a non-small business debtor on March 2, 2009. By then, the time to confirm its plan as a small business debtor had already expired, and Global Crossing had moved to dismiss based on CCT's failure to confirm a plan within the time limit prescribed by the Bankruptcy Code. The Debtor's argument suggests that it cannot cure its statutory non-compliance retroactively simply by changing its designation, and it has not supplied any authority indicating that it can.

should be judicially estopped from switching positions at this point, however. Indeed, if the original position having been erroneous somehow excuses it, or establishes or can be substituted for "inadvertence," such an exception would swallow the entire doctrine of judicial estoppel. That is because, in every case in which a court is asked to apply judicial estoppel, there are by definition two contrary positions, of which only one can be valid or "true." It only makes sense that the first position taken would be the one claimed to be the "erroneous" one that should be changed to the "correct" one.

393 B.R. at 461. In short, CCT cannot take the position on the Motion to Dismiss that it is not a small business debtor, regardless of whether it is.[13] The Court has considered CCT's other arguments in opposition to the application of judicial estoppel, and concludes that they lack merit. Since it is undisputed that CCT failed to confirm its Plan within the 45 day period prescribed by 11 U.S.C. § 1129(e), Global Crossing has sustained its burden of proof that cause exists under 11 U.S.C. § 1112(b)(4)(J) to convert or dismiss the case.

**D.  The Exceptions to Mandatory Dismissal**

The existence of cause does not completely resolve the Motion to Dismiss. Although § 1112(b) states that the court "shall" convert or dismiss where cause is established, it grants the Court limited discretion to deny the motion in three circumstances. First, the Court may deny the motion if there are "unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of the creditors and the estate." 11 U.S.C. § 1112(b)(1). Second, the Court can appoint a trustee consistent with the requirements of 11 U.S.C. § 1104(a)(3). 11 U.S.C. § 1112(b)(1). Third, even in the absence of unusual circumstances, the Court may deny the motion if (i) there is a reasonable likelihood that the debtor can confirm a plan within the timeframes established by §§ 1121(e) and 1129(e), or if these sections do not apply, "within a reasonable period of time," (ii) the "cause" for conversion

---

[13]  Global Crossing also argues that CCT's liquidated non-contingent debts total less than $2 million, and that CCT is small business debtor as a matter of fact and law. In light of the application of judicial estoppel, the Court does not reach that argument.

or dismissal does not include a continuing and substantial loss to or diminution of the estate and the absence of a likelihood of rehabilitation, and a reasonable justification for the act or omission exists, and (iii) the act or omission will be cured within a reasonable time fixed by the court. 11 U.S.C. § 1112(b)(2). See generally 7 COLLIER ¶ 1112.04[1], at 1112-22.

None of these exceptions apply. Although there are a few other creditors, this case is essentially a two party dispute involving CCT and Global Crossing, and neither side has urged me to appoint a chapter 11 trustee. Furthermore, the Debtor cannot confirm a plan within the timeframes established by § 1112(b)(2). As noted, the debtor has already missed the 45 day deadline established by 11 U.S.C. § 1129(e).

In its original opposition memorandum, the Debtor argued that another party in interest, specifically Call Center,[14] could still file a plan after the 300 day time limit imposed under § 11 U.S.C. § 1121(e)(2) had expired. (Debtor's Opposition to the Motion of Global Crossing Telecommunications, Inc. to Dismiss or Convert This Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b)(1), dated Mar. 2, 2009 ("CCT Original Memo"), at ¶¶ 12-13 (ECF Doc. # 154). At least one court agrees with this construction of § 1121(e). See In re Florida Coastal Airlines, Inc., 361 B.R. 286, 291-92 (Bankr. S.D. Fla. 2007); accord H.R. Rep. No. 109-31, at 437 (2005)(The amendment to § 1121(e) "further provides that a small business debtor must file a plan and any disclosure statement not later than 300 days after the order for relief."). Contra 7 Collier ¶ 1121.07[2], at 1121-9 ("A party in interest may file a competing plan after the expiration of the 180-day period so long as the party files its plan before the expiration of 300 days from the order

---

[14]     At a hearing held on April 22, 2009, the attorney for Call Center stated that Call Center intended to file a creditor's plan. (See Objection of Equity Security Holder Dean Vlahos to the Application and Supplemental Application of Robinson Brog Leinwand and Green Genovese & Gluck P.C. as and for its Second Interim Award of Compensation, and to Wiley Rein's Final Application for Allowance of Fees and Costs and Request for Appointment of Fee Examiner or Alternatively for Evidentiary Hearing, dated May 18, 2009, at Ex. A (4/22/09 Tr. at 10))(ECF Doc. # 175.) Call Center never filed a plan.

for relief.").  Assuming that CCT is correct, Call Center is now in bankruptcy, and no other

party-in-interest has filed a plan in the two years since the 300 day period under § 1121(e)

expired.  Hence, there is no plan to confirm within a reasonable period of time.[15]

This leaves "unusual circumstances," and the Debtor points to two.  First, "[b]oth the

plan filed by the Debtor and the anticipated Creditor Plan propose to pay creditors 100 cents on

the dollar."  (CCT Original Memo at ¶ 17.)  But the Debtor can no longer file a plan, and the

"anticipated Creditor Plan" never materialized.  Furthermore, the Debtor has few creditors other

than Global Crossing and Zone.  Both support dismissal, and since the Debtor intends to pay its

creditors 100%, it can deal with those other creditors outside of bankruptcy.

Second, CCT maintains that the pendency of the Adversary Proceeding is an "unusual

circumstance" for several reasons.  CCT contends that Global Crossing waived any right to move

to dismiss based on the failure to comply with the 45 day requirement in § 1129(e) because it

made the "strategic election" to continue to litigate in this Court after it was aware of the grounds

for its Motion to Dismiss.  (Id. at ¶¶ 21, 24.)  Stretching the waiver argument, CCT argues that

Zone also waived or forfeited any right to rely on the 45 day time limit "since it had knowledge

of the trial of the adversary proceeding and took no action until an adversary complaint was filed

against it one year later.  Zone was apparently happy to have the trial of the Global adversary

---

[15]     The ability to confirm will also depend on the outcome of the litigation between CCT and Global Crossing.
In response to the Court's oral order to show cause directing CCT to assume or reject its executory contract with
Global Crossing, the Debtor argued that it could not make the decision to assume or reject until the Court determines
the issues in the Adversary Proceeding.  (Debtor's Objection to Court's Sua Sponte Order Compelling Debtor to
Move to Assume or Reject Executory Contract Pursuant to 11 U.S.C. § 365, dated Nov. 17, 2009, at 6 ("[T]he
Debtor's sound business judgment requires that it await this Court's adjudication of Global Crossing's claims in the
Adversary Proceeding, and in the event that Global Crossing prevails on its claims, to then consider rejecting the
RCA, thereby relegating any damages sustained by Global Crossing to an unsecured pre-petition claim.)(ECF Doc.
# 253).)  Since the Debtor must assume or reject before confirmation, 11 U.S.C. § 365(d)(2), confirmation must
await the resolution of the Adversary Proceeding.  Given the complexity of the litigation, the unsuccessful
mediation, the litigiousness of the parties and the likelihood of appeals, the Adversary Proceeding will not be
resolved within a reasonable period of time.

proceeding go forward because as a creditor, it would benefit from any determination in favor of the Debtor and the resultant increase in the Debtor's estate. . . . Such a litigation tactic should not be condoned." (Id. at ¶ 25.) In addition, Global Crossing did not make its motion until the statute of limitations had run on certain claims asserted in the adversary proceeding. (Id. at ¶ 27.) Finally, the Court already decided that Global Crossing breached the parties' contract, and a trial on the remaining issues is forthcoming. (Id. at ¶¶ 25-26.)

The Debtor's arguments highlight that the only purpose of the bankruptcy case is to serve as a vessel to hold the Adversary Proceeding. The chapter 11 serves no other purpose. The Debtor cannot confirm a plan, and in almost three years, no one else has come forward with a plan. If, therefore, the case is not dismissed, it will have to be converted. Moreover, as explained in the next section, the Court will retain jurisdiction over the Adversary Proceeding following dismissal. This will eliminate the Debtor's concerns regarding the fairness and impact of a dismissal of the case.

**E.        Retention of Limited Jurisdiction**

**1.        The Adversary Proceeding**

As a rule, related proceedings should be dismissed when the underlying bankruptcy case is terminated. Porges, 44 F.3d at 162. "This general rule favors dismissal because a bankruptcy court's jurisdiction over such related proceedings depends on the proceedings' nexus to the underlying bankruptcy case." Id. The bankruptcy court may nevertheless deviate from the general rule when cause to do so is shown. Id. (citing 11 U.S.C. § 349). "The decision whether to retain jurisdiction should be left to the sound discretion of the bankruptcy court or the district court, depending on where the adversary proceeding is pending." Id. The court must consider four factors in exercising its discretion: judicial economy, convenience of the parties, fairness

and comity.  Id. at 163; cf. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)("[A]

federal court should consider and weigh in each case, and at every stage of the litigation, the

values of judicial economy, convenience, fairness, and comity in order to decide whether to

exercise jurisdiction over a case brought in that court involving pendent state-law claims.").

### a.      Judicial Economy and Convenience

Judicial economy will be served by exercising jurisdiction over the Adversary

Proceeding after dismissal of the case.  The Court has already tried and disposed of one claim for

relief, holding that Global Crossing breached the parties' contract when it unilaterally raised the

rates for its services.  In re CCT Communications, Inc., 2008 WL 2705471, at *8.  In addition,

the Court has ruled on Global Crossing's motion for leave to amend its complaint, making

determinations regarding the legal sufficiency of several proposed new claims.  Id. at *12-18.  It

would be inefficient and unfair to ask another court to pick up in the middle.

In addition, neither party has suggested that this forum is inconvenient, or that there is a

more convenient forum somewhere else.  I assume, in this regard, that the Adversary Proceeding

would be recommenced in New York State Supreme Court, New York County or the United

States District Court for the Southern District of New York.  Both lie roughly one mile north of

this Courthouse.

### b.      Fairness

CCT argues that it would be unfair not to retain the Adversary Proceeding because it

has incurred substantial legal expenses, with the concomitant investment of time and effort, in

connection with the Adversary Proceeding.  (CCT Original Memo at ¶ 34.)  Furthermore, the

statute of limitations has already run on its claims under the Telecommunications Act, and

dismissal of the Adversary Proceeding may jeopardize those claims.  (Id. at ¶ 36.)

Global Crossing does not dispute CCT's claims of prejudice. Instead, it blames CCT's plight on CCT. It maintains that CCT proposed a non-confirmable plan of reorganization, and prosecuted the Adversary Proceeding knowing that a plan could never be confirmed. Furthermore, this is a two party dispute, and Global Crossing should not be forced to litigate this case in a federal court when the sole basis of federal jurisdiction is the bankruptcy. (Reply Memorandum in Further Support of Motion By Global Crossing Telecommunications, Inc. to Dismiss or Convert This Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b)(1), dated Mar. 3, 2009 at ¶ 26 (ECF Doc. # 155).)

CCT did not file the bankruptcy case to create federal jurisdiction for the Adversary Proceeding. In fact, Global Crossing commenced the Adversary Proceeding, and required CCT to defend it. In addition, although I do not conclude that CCT waived any rights by waiting until February 2009 to make its Motion to Dismiss, I nonetheless take the delay into account when assessing fairness. The motion came within a few days after CCT contends the statute of limitations expired on its Telecommunication Act claims. (See CCT Original Memo at ¶ 36.) The danger that the dismissal of the Adversary Proceeding would effectively terminate these claims renders dismissal of the Adversary Proceeding unfair to CCT. See In re Lake Tahoe Land Co., 12 B.R. 479, 481 (Bankr. D. Nev. 1981).

### c.      Comity

"Comity" refers to the principle of deference that a federal court accords to the state courts to decide issues of unsettled questions of state law. See Valencia ex rel. Franco v. Lee, 316 F.3d 299, 306 (2d Cir. 2003); McCarthy v. Olin Corp., 119 F.3d 148, 158 (2d Cir. 1997)("When federal courts, in effect, prevent state courts from deciding unsettled issues of state law, they violate fundamental principles of federalism and comity.") Although many of the

claims and counterclaims asserted in the Adversary Proceeding are based on breach of contract

or rescission, Global Crossing has not identified any unsettled questions of state law that are

implicated. Furthermore, CCT's counterclaims assert claims based on violations of federal

telecommunications and bankruptcy law. Accordingly, principles of comity do not weigh in

favor of declining to exercise jurisdiction over the Adversary Proceeding, and consideration of

the four factors discussed above leads me, in the exercise of discretion, to retain jurisdiction over

the Adversary Proceeding following the dismissal of the bankruptcy case.

### 2. The Litigation Against Zone

On January 27, 2009, CCT commenced an adversary proceeding against Zone. CCT's

Amended Complaint, dated Feb. 27, 2009 (Adv. Proc. No. 09-1024, ECF Doc. 4) alleged that on

November 1, 2006, Zone entered into an agreement to purchase telecommunications equipment

and services from CCT, and breached the agreement by failing to pay the amounts due and

owing. The Amended Complaint included two counts: breach of contract and account stated.

Zone's answer denied the material allegations and asserted various affirmative defenses,

including that CCT terminated the service without notice in violation of federal

telecommunications law. (First Supplemental Answer of Zone Telecom, Inc. to Amended

Adversary Complaint, dated May 26, 2009)(Adv. Proc. No. 09-1024, ECF Doc. # 10.)

I decline in the exercise of discretion to retain jurisdiction over this adversary proceeding

following dismissal of the bankruptcy case. In contrast to the Adversary Proceeding, the Court

has not conducted any hearings or decided any issues. The case has not advanced beyond the

pleading stage, and the docket sheet consists of just eleven entries.

Furthermore, CCT asserts only state law contract claims, and the contract claims are not time-barred.[16] In addition, the parties stipulated to venue and personal jurisdiction exclusively in the courts of Connecticut. (Amended Complaint, Ex. 1 at § 8.) Finally, although Zone invoked federal telecommunications law in its answer, it did not seek affirmative relief, and its defense does not implicate any concerns pertaining to the statute of limitations. In any event, Zone, the party that invoked the telecommunications law defense, urges dismissal.

### 3. Fee Applications

The Debtor's professionals have rendered substantial services during the case, and the Court has already approved several interim fee applications. The Court will retain jurisdiction to consider the professional fee applications and resolve any disputes. See In re Hagerstown Fiber Ltd. P'ship, 226 B.R. 353, 359-60 (Bankr. S.D.N.Y. 1998).

### CONCLUSION

The bankruptcy case is dismissed, but the Court will retain jurisdiction over the Adversary Proceeding and fee applications filed by Court appointed professionals. The foregoing constitutes the Court's findings of fact and conclusions of law. The Court will enter an appropriate order.

Dated: New York, New York
      November 25, 2009

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
Chief United States Bankruptcy Judge

---

[16] The parties' agreement is governed by Connecticut law, (see Amended Complaint, Ex. 1 at § 8), and a six-year statute of limitations applies to actions for an account or breach of a written contract. CONN. GEN. STAT. § 52-576(a)(2005).