UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                              :

In re:                                   :         Chapter 11
                                              :

CCT COMMUNICATIONS, INC.,     :         Case No. 07-10210 (SMB)
                                            :

              Debtor.          :
                                            :
---------------------------------------------------------------x

## MEMORANDUM DECISION  REGARDING FINAL FEE APPLICATIONS BY  ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C. AND WILEY REIN LLP

**A P P E A R A N C E S :**

ROBINSON BROG LEINWAND GREENE
       GENOVESE & GLUCK P.C.
Former Attorneys for the Debtor
1345 Avenue of the Americas
New York, New York 10105

A. Mitchell Greene, Esq.
       Of Counsel


WILEY REIN LLP
Former Special Telecommunications and Litigation Counsel for the Debtor
1776 K Street, N.W.
Washington, D.C. 20006

       Andrew McBride, Esq.
       Bennett L. Ross, Esq.
       Howard Anglin, Esq.
         Of Counsel


Dean Vlahos, Pro Se
640 Federal Road
Brookfield, CT 06804

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

At all relevant times, the debtor, a Delaware corporation, purchased telecommunications

services and resold those services to third parties.  It filed a chapter 11 petition in this Court on

January 29, 2007 (the "Petition Date").   The Court dismissed the case on November 25, 2009,

but retained jurisdiction to hear and determine all applications for professional compensation.

(Order Dismissing Case, dated Nov. 25, 2009) (ECF Doc. # 259).)  The matter presently before

the Court concerns the final fee applications filed by the debtor's former general bankruptcy

counsel, Robinson Brog Leinwand Greene Genovese & Gluck, P.C. ("Robinson Brog"), and the

debtor's former special telecommunications and litigation counsel, Wiley Rein, LLP ("Wiley

Rein" and together with Robinson Brog, the "Law Firms").  Disputes between the firms and

Dean Vlahos ("Vlahos"), the Debtor's sole shareholder, officer and director, led to their

withdrawal, and Vlahos has filed a substantial objection to their fee applications.  (Objection of

Equity Security Holder Dean Vlahos to the Application and Supplemental Application of

Robinson Brog Leinwand Greene Genovese & Gluck P.C. as and for its Second Interim Award

of Compensation, and to Wiley Rein's Final Application for Allowance of Fees and Costs and

Request For Appointment of Fee Examiner or Alternatively for Evidentiary Hearing, dated May

18, 2009 ("Vlahos Objection") (ECF Doc. # 175).)

For the reasons stated below his objections are granted in part and denied in part.

Robinson Brog is allowed final fees in the sum of $571,592.50 and reimbursed expenses in the

sum of $20,175.28.  Wiley Rein is allowed fees in the sum of $1,008,166.50 and reimbursed

expenses in the sum of $47,141.74.

## BACKGROUND

### A.    The Retention of Robinson Brog

This bankruptcy had its origins in a dispute between the debtor and Global Crossing

Telecommunications, Inc. ("Global Crossing").  Global Crossing sold telecommunications

services to the debtor that the debtor resold to third parties.  The dispute between these parties

was the subject of a prior opinion of this Court, see Global Crossing Telecommunications, Inc. v.

CCT Communications, Inc. (In re CCT Telecommunications, Inc.), Adv. Pro. No. 07-1942, 2008

WL 2705471 (Bankr. S.D.N.Y. July 2, 2008), and I assume the reader's familiarity with that

decision.

The debtor retained Robinson Brog to file the chapter 11 petition, which it did on January

29, 2007.  Ten days later, Robinson Brog filed its retention application for employment as

attorneys for the debtor.  In accordance with the general practice in this district, Robinson Brog

simultaneously requested a "sign off" by the United States Trustee ("UST"), indicating that she

had "no opposition" to the retention.

According to Robinson Brog, it contacted the UST to inquire into the status of the order

after a period had elapsed and it had not been forwarded to the Court.  The UST informed

Robinson Brog that the order had apparently been lost.  Robinson Brog resubmitted the order,

(Robinson Brog Leinwand Greene Genovese & Gluck P.C.'s Response to Objection of Equity

Security Holder Dean Vlahos to its Fee Application, dated June 22, 2009, at ¶ 4 ("Robinson Brog

Response") (ECF Doc. # 196), the proposed order was "signed off" by the UST and forwarded to

the Court, and the Court signed it on July 24, 2007.  (Order for Retention of Attorneys for

_____, dated July 24, 2007 (ECF Doc. # 26).)  The order did not provide for nunc pro tunc

retention.

## B.    The Retention of Wiley Rein

Global Crossing commenced an adversary proceeding against the debtor on July 23,

2007, relating to the parties' dispute.  (See Global Crossing Telecommunications. Inc. v. CCT

Communications. Inc., Adv. Pro. No. 07-1942 (SMB) (the "Adversary Proceeding").)  The

litigation raised issues of telecommunications law prompting the debtor's need for specialized

assistance.   The debtor applied to retain Wiley Rein, a firm with expertise in the

telecommunications area.   The Court approved the retention of Wiley Rein "to assist in the

defense of the adversary proceeding captioned: Global Crossing Telecommunications. Inc. v.

CCT Communications. Inc., Adversary Proceeding No. 07-1942 (SMB) and to advise the Debtor

with respect to federal telecommunications-related issues in connection with issues that may

arise"  (Order Authorizing Retention of Special Telecommunications Counsel to the Debtor,

dated October 19, 2007) (ECF Doc. # 45.)  Robinson Brog continued to serve as the debtor's

lead litigation counsel.

In fact, Wiley Rein assumed the major laboring oar.  In December 2007, the debtor filed

a supplemental application to expand Wiley Rein's role, and make the firm the lead counsel in

the litigation with Global Crossing.  (Supplemental Application for Order Authorizing the

Retention of Wiley Rein LLP as Special Litigation Counsel and Special Telecommunications

Counsel for the Debtor, dated Dec. 7, 2007, ¶ 3) (ECF Doc. # 53.)  The proposed order fixed the

retention nunc pro tunc to July 23, 2007.  The Court struck that provision, and approved Wiley

Rein's expanded retention "as its special litigation counsel to defend the Debtor and prosecute

the Debtor's counterclaims in the adversary proceeding captioned: Global Crossing

4

_____, Adversary Proceeding No. 07-1942

(SMB)," as of December 7, 2007.  The order stated that it was "without prejudice to the Debtor's

right to seek the retention of Wiley Rein LLP nunc pro tunc to an earlier date."  (Order

Authorizing Retention of Special Litigation Counsel and Special Telecommunications Counsel

to the Debtor, dated Dec. 19, 2007) (ECF Doc. # 76.)

## C.    The Termination of the Retentions

Acrimony eventually developed between Vlahos on the one hand and the Law Firms on

the other.  In December 2008, Vlahos instructed Wiley Rein not to work on certain aspects of

discovery in the Adversary Proceeding.  On January 28, 2009, Wiley Rein filed a motion to

withdraw as counsel.  (Wiley Rein LLP's Motion to Withdraw as Counsel, dated Jan. 28, 2009)

(ECF Doc. # 133.)  According to Wiley Rein's final fee application, it was authorized to

withdraw from its representation of the debtor by order dated February 18, 2009.  (Wiley Rein

LLP's Final Application for Allowance of Fees and Costs, dated April 21, 2009, at ¶ 8) (ECF

Doc. # 162.)  The docket does not reflect any such order, but this was apparently an oversight.

The Court authorized Wiley Rein's withdrawal from the bench on February 10, 2009, (Transcript

of Hearing, held Feb. 10, 2009, at 14) (ECF Doc. # 148), and the debtor submitted a proposed

order on February 20, 2009, seeking authorization to retain Duane Morris LLP as special

litigation counsel.  (Notice of Settlement, dated Feb. 20, 2009) (ECF Doc. # 150.)  Accordingly,

the Court will treat February 18, 2009 as the termination date of Wiley Rein's retention.

Robinson Brog lasted a bit longer.  It moved to withdraw on April 24, 2009.  (Motion to

Withdraw as Counsel, dated Apr. 24, 2009) (ECF Doc. # 164.)  Like Wiley Rein, it cited

disagreements with Vlahos over strategy, his refusal to follow the firm's advice and his

interference with the firm's service as debtor's counsel.  (Id. ¶ 6.)  The Court granted the motion

on June 23, 2009.  (Order Granting Motion to Withdraw as Counsel, dated June 23, 2009) (ECF

Doc. # 198.)

**D.      The Final Applications and Vlahos's Objections**

The following chart reflects the final fees and expenses sought by the applicants, and the

amounts already awarded (and presumably paid) on an interim basis[1]:

| Applicant | Final Fee Request ($) | Fees Previously Awarded and Paid ($) | Final Expenses Sought and Already Paid ($) |
|---|---|---|---|
| Robinson Brog | 650,502.50 | 282,829.00 | 20,175.28 |
| Wiley Rein | 1,054,302.50 | 527,151.25 | 47,291.74 |

The Vlahos Objection challenged the fee applications on the following grounds:

| Objection | Ground[2] |
|---|---|
| 1 | Robinson Brog and Wiley Rein's Fee Applications Should be Closely Scrutinized by a Fee Examiner For Duplication Of Efforts, Etc. |
| 2 | Both Firms Applications Fail To Comply With Applicable Fee Guidelines And Thus Should Be Denied Without Prejudice To Refiling In Compliance. |
| 3 | Robinson Brog's Application Should Be Disallowed To The Extent Of Services Rendered Before Entry Of The Order Authorizing Its Retention. |
| 4 | Wiley Rein's Application Should Be Disallowed To The Extent Of Non-Telecommunications Services Rendered Prior To December 20, 2007. |

---

[1]      The source of this information is the schedule attached to the Order Granting Applications for Allowance of Compensation and Reimbursement of Expenses on an Interim Basis, dated June 30, 2009 (ECF Doc. # 202.)

[2]      The "Ground" is taken verbatim from the Vlahos Objection.

| 5 | Wiley Rein's Application Should Be Disallowed To The Extent Not Supported By Time Records. |
|---|---|
| 6 | Both Firms Fees Should Be Disallowed To The Extent Of "Review" And "Attention" Services. |
| 7 | Both Firms Fees Should Be Disallowed To The Extent Of Other Vague Entries. |
| 8 | Both Firms Fees Should Be Disallowed To The Extent Of Time Expended To Review And Edit Time Entries. |
| 9 | Both Firms Fees Should Be Disallowed To The Extent Of Other Clerical, Ministerial, Or Administrative Tasks. |
| 10 | Both Firms Fees Should Be Disallowed To The Extent Of Defending Fee Applications. |
| 11 | Both Firms' Fees Should Be Disallowed To The Extent Of Too Many Internal Conferences With Too Many Lawyers. |
| 12 | Both Firms Fees Should Be Disallowed To The Extent Of Multiple Lawyers At Depositions, Hearings, Or Trial Who Did Not Participate In Or Contribute To The Proceedings. |
| 13 | Both Firms' Fees Should Be Disallowed To The Extent Of "Lumping" / Block Billing Entries Over Thirty Minutes. |
| 14 | Both Firms' Fees Should Be Disallowed To The Extent Of Preparing Their Employment Applications. |
| 15 | Wiley Rein's Travel Time Should Be Disallowed Or Alternatively Reduced To 50% |

## DISCUSSION

### A.      Introduction

Bankruptcy Code § 330 authorizes a bankruptcy court to award reasonable compensation to a fee applicant based on the actual, necessary services, and to reimburse him for his actual, necessary expenses. 11 U.S.C. § 330(a)(1). The relevant criteria include the following:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

The fee applicant bears the burden of proof on his claim for compensation. Howard & Zukin Capital v. High River Ltd. P'ship, No. 05 Civ. 5726 (BSJ), 2007 WL 1217268, at *2 (S.D.N.Y. Apr. 24, 2007); Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM, Inc.), 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997); In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). Even in the absence of an objection, the Court has an independent duty to scrutinize the fee request. In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 841 (3d Cir. 1994). The applicant must submit contemporaneous time records, although a computerized printout summary, in lieu of the original time slips, will suffice. Masterwear Corp. v. Angel & Frankel, P.C. (In re Masterwear Corp.), 233 B.R. 266, 278 & n. 14 (Bankr. S.D.N.Y. 1999). The standards for time records are contained in this Court's Fee Guidelines, as amended, and the guidelines issued by the Executive Office of United States Trustees. See 28 C.F.R., pt. 58, App. A (2010) ("UST Guidelines"). Generally, fee applications, standing alone, must contain sufficient detail to demonstrate compliance with § 330. UST Guidelines, (b). Any uncertainties due to poor record keeping are resolved against the applicant. In re Poseidon Pools of America, 216 B.R. 98, 100–101 (E.D.N.Y. 1997).

8

Time records must be broken down by project. UST Guidelines, (b)(4)(i). Entries concerning communications (e.g., telephone calls, letters) should identify the parties and the nature of the communication. Id., (b)(4)(v). Entries relating to conferences or hearings should identify the subject of the hearing, and explain, where appropriate, why more than one professional from the applicant participated. Id. Finally, multiple project services rendered on the same day should be listed in separate entries unless the aggregate daily time does not exceed one half hour. Id. Alternatively, and consistent with the practice followed here prior to the adoption of the UST Guidelines, the applicant may "lump" his daily project entries provided he indicates parenthetically the amount of time spent on each activity.

A court does not determine "reasonableness" through hindsight. In re Brous, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007). A decision reasonable at first may turn out wrong in the end. The test is an objective one, and considers "what services a reasonable lawyer or legal firm would have performed in the same circumstances." In re Ames Dep't Stores, Inc., 76 F.3d 66, 72 (2d Cir.1996) (citing In re Taxman Clothing Co., 49 F.3d 310, 315 (7th Cir.1995)(Posner, J.); accord In re Angelika Films 57th, Inc., 227 B.R. 29, 42 (Bankr. S.D.N.Y. 1998); In re Keene Corp., 205 B.R. at 696; In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 23 (Bankr. S.D.N.Y. 1991).

As an initial matter, Vlahos's request to appoint a fee examiner is denied. Vlahos has conducted a meticulous and thorough review of the applicants' time records, and has attached marked up versions of the time records that key his objections to specific entries. The Court has also reviewed the time records. Under the circumstances, the appointment of a fee examiner would be an unnecessary expense.

### B.    The Dates of Retention

The beginning dates of each firm's authorized retention are the subject of dispute.  As noted, Robinson Brog filed its retention application ten days after the petition date, and immediately sent it to the UST for her "sign off."  The application and proposed order languished at the UST's office, and the retention was not signed until July 24, 2007, nearly six months after the commencement of the case.  When the debtor sought to expand Wiley Rein's retention as special litigation counsel nunc pro tunc to July 23, 2007, the Court authorized the retention as of December 7, 2009, without prejudice to its right to seek nunc pro tunc retention to the earlier date.  Vlahos argues that neither firm should be compensated for services or expenses incurred prior to their retention dates.

Sections 327(a) and 327(e) of the Bankruptcy Code provide that a debtor may retain professionals only with court approval.  No service performed by professionals is compensable until the court approves such retention.  In re Robotics Resources R2, Inc., 117 B.R. 61, 62 (Bankr. D. Conn. 1990); In re Brown, 40 B.R. 728, 730 (Bankr. D. Conn. 1984); In re Sapolin Paints Inc., 38 B.R. 807, 817 (Bankr. E.D.N.Y. 1984).  In the Second Circuit, there is a per se prohibition against compensating professionals for services rendered prior to a retention order. See, e.g., Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.), 655 F.2d 463, 469 (2d Cir. 1981), cert. denied, 455 U.S. 941 (1982); Smith v. Winthrop, Stimson, Putnam & Roberts (In re Sapphire Steamship Lines, Inc.), 509 F.2d 1242, 1245–46 (2d Cir. 1975); In re 245 Assocs., LLC., 188 B.R. 743, 749 (Bankr. S.D.N.Y. 1995).  "Nunc pro tunc approval should only be granted in narrow situations and requires that (i) if the application had been timely, the court would have authorized the appointment, and (ii) the delay in seeking court approval resulted from extraordinary circumstances."  In re Keren Ltd. P'ship, 189 F.3d 86, 87 (2d Cir.

10

1999). "'Simple neglect' on the part of a debtor in failing to take timely action does not

constitute the 'extraordinary circumstances' necessary to justify nunc pro tunc relief." In re

Aquatic Dev. Group, Inc., 352 F.3d 671, 679 (2d Cir. 2003) (quoting Land v. First Nat'l Bank of

Alamosa (In re Land), 943 F.2d 1265, 1268 (10th Cir. 1991)); accord In re Carpenter, 392 B.R.

97, 105 (Bankr. D. Vt. 2008).

Robinson Brog satisfies the Keren standards, and is deemed to have been retained nunc

pro tunc to the petition date. First, the Court authorized its retention when presented with the

proposed order. Second, the delay in the execution of the retention order was due to

extraordinary circumstances. Robinson Brog dutifully forwarded its application and proposed

order to the UST within ten days of the petition date. Finding that the order had not been signed,

it contacted the UST regarding its status. The UST advised Robinson Brog that the proposed

order had been lost, and Robinson Brog submitted another copy. The UST eventually indicated

its "no objection," forwarded the proposed order to the Court, and the Court signed the order on

July 24, 2007. Robinson Brog proceeded diligently, and the delay in the execution of the order

was due to circumstances beyond its control.

I reach a different conclusion regarding Wiley Rein. Although it also satisfies the first

prong of the Keren test, it fails the second. Unlike the Robinson Brog order, the December 2007

Wiley Rein retention order struck the proposed provision that would have authorized the

retention nunc pro tunc to July 2007, and indicated that a separate application for nunc pro tunc

retention must be made. Despite being on notice, the firm did not take further action.

It does not follow, however, that all of the services rendered by Wiley Rein prior to

December 7, 2007 should be disallowed. The original retention order authorized Wiley Rein to

"assist in the defense of the adversary proceeding" with Global Crossing and "to advise the

Debtor with respect to federal telecommunications-related issues in connection with issues that may

arise in the Bankruptcy Court and any other court of competent jurisdiction in connection with

anticipated litigation matters"  Thus, the initial retention was broad, and overlapped with many of

the services one might expect lead litigation counsel to perform.  I note, in this regard, that

Vlahos's objection on this score is a general one.  Although he meticulously reviewed and

identified perceived deficiencies with the applicants' time records in other areas, he did not

identify any specific pre-retention time entry that should be disallowed.  (See Vlahos Objection ¶

13; pp. 24–25.)

The Court has nonetheless examined Wiley Rein's pre-December 7, 2007 services, and

concludes that one specific area of services aggregating $7,936.50 in billed time should be

disallowed.  Wiley Rein lawyers apparently performed legal research and drafted a memorandum

relating to the election of remedies or other state law issues under New York law.  Some of these

services are lumped with otherwise compensable services, making it impossible to allocate the

time.  Accordingly, the services depicted in the following table are disallowed:

| Date | Timekeeper | Service | Time Billed | Amount Disallowed ($) |
|------|-----------|---------|-------------|-----------------------|
| 9/16/07 | BLR | Draft memo concerning statutory and contract research issues (1.1); email to B. Butler regarding same (.2); email to client regarding FRN / red light status (.2). | 1.50 | 817.50 |
| 9/18/07 | KBM | Research elements of cause of action for breach of contract under sample amended answer and counterclaim pleading format and review various documents in preparation for drafting of counterclaims (1.4). | 1.40 | 497.00 |
| 10/26/07 | CMH | Research re election of remedies in New York. | 3.0 | 975.00 |
| 10/29/07 | CMH | Research re election of remedies in New | 3.0 | 975.00 |

| Date | Atty | Description | Hours | Amount |
|---|---|---|---|---|
| | | York. | | |
| 10/30/07 | CMH | Research re election of remedies in New York; draft memo re same. | 5.50 | 1,787.50 |
| 10/31/07 | CMH | Edit memo re election of remedies in New York (.7); calls re same (.3). | 1.0 | 325.00 |
| 10/31/07 | BLR | Review and revise memo from C. Hilke regarding election of remedies; review email from D. Vlahos;  research service terms and conditions; email to L. Schwartz and F. Ringel regarding same;  conference with B. Butler regarding same; call from F. Ringel regarding service terms and conditions; review draft discovery responses. | 3.8 | 2,071.00 |
| 11/01/07 | CMH | Edit memo re election of remedies in New York | 1.0 | 325.00 |
| 11/01/07 | BLR | Revise election of remedies memo; conference with C. Hilke. | .30 | 163.50 |
| | | | | 7,936.50 |

## C.    Lumping

As Vlahos correctly observes, the Law Firms are guilty of lumping, i.e., aggregating time entries of more than 30 minutes that involve two or more distinct services but fail to identify the amount of time spent on each service.  Where lumping exists, and subject to other possible objections, the Court has allowed 30 minutes of time, and disallowed the balance.

Schedule A identifies Robinson Brog's lumped entries.  These entries reflect $115,077.51 of billed time, and $78,610.50 is disallowed.

Schedule B identifies Wiley Rein's lumped entries.  These entries reflect $16,681.00 of billed time, and $14,131.00 is disallowed.

13

C.      **Absence of Time Records**

The Vlahos Objection accurately notes that "[a]ccording to ECF," the Wiley Rein final

application did not include detailed time entries for the services rendered on and after January 1,

2009.  Instead, it was limited to a one page summary sheet listing fees and expenses totaling

$99,459.32.  (Vlahos Objection pp. 25–26.)  Wiley Rein responds that it did serve complete

billing records for this period with the copies of the application delivered to the parties and the

Court, including Vlahos, in April 2009.  (Response of Wiley Rein LLP to Objections of Equity

Security Holder Dean Vlahos to Wiley Rein's Final Application for Allowance of Fees and

Costs, dated June 19, 2009 ("Wiley Rein Response"), at 9–10) (ECF Doc. # 195.)  As

represented, the chambers copy includes these records.  Furthermore, Vlahos never stated that he

did not receive the 2009 time records; he only observed that they were not filed on ECF.  While I

do not condone Wiley Rein's failure to file time records that it obviously included in its final

application and provided to the parties and the Court,[3] it would be unduly harsh to deny all of the

fees on this basis.

I have nonetheless reviewed the time records, which consist of twelve pages and

aggregate $96,102.00 in billed time, and conclude that $15,984.75 should be disallowed.  First,

many of the entries are inadequate in that they refer to telephone calls and emails, but fail to

identify the subject matter of the call or email.  See In re Citrone Development Corp., 16 B.R.

359 (Bankr. S.D.N.Y. 1989) ("[t]he failure to provide sufficient details to allow the court to

perform its task of determining the nature and value of the time spent by the attorney for the

debtor while engaged in those telephone calls compels a conclusion that they are not

compensable."); In re Hudson, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007) ("[T]ime entries

---

[3]      Nor has Wiley Rein explained why it did not file the missing records after the omission was brought to its
attention.

contain[ing] vague and inadequate description[s] [such as] references to telephone calls that do not make clear who the calls were with or the substance of the call . . . [or] references to a 'memo of law' without any indication as [to whether] time is sought for researching and/or drafting of the memorandum nor the legal issues involved . . . make a fair evaluation of the work done and the reasonableness and necessity for the work extremely difficult, if not impossible.") The following table summarizes these inadequate entries, and the amount that is disallowed:

| Date of Service | Timekeeper | Reason for Disallowance | Amount Disallowed ($) |
|---|---|---|---|
| 01/06/09 | HJG | The entry fails to describe the subject of the conference call with the client. | 342.50 |
| 01/06/09 | SJO | The conference call with B. Ross, the client and local counsel fails to identify the subject of the call. | 620.50 |
| 01/09/09 | BLR | The telephone call from M. Greene, the conference with B. Rein and the telephone call with D'Ercole fail to describe the subject matter of these communications. | 625.00 |
| 01/13/09 | BLR | The telephone calls with D'Ercole and Schwartz fail to identify the subject matter of the calls. | 312.50 |
| 01/14/09 | BLR | The telephone call with J. D'Ercole fails to identify the subject matter of the call. | 187.50 |
| 01/22/09 | BLR | The telephone calls from Vlahos (0.3), D'Ercole, Schwartz and Trache fail to identify the subject matter of the calls. | 437.50 |
| 01/23/09 | HJG | The entry fails to identify the other party to the conference. | 342.50 |
| 01/23/09 | BLR | The calls from D'Ercole and Greene and the conference call with Brandt fail to identify the subject matter of the calls. (The entry is also lumped). | 625.00 |

15

| 01.25/09 | BLR | The entry fails to identify the subject matter of the draft letter to Brandt and the email to D'Ercole. (The entry is also lumped). | 1,000.00 |
|---|---|---|---|
| 01/26/09 | DGT | "Attention" to Vlahos's request does not adequately describe the service, and only 50% of the time charged is allowed. | 72.75 |
| 01/27/09 | RWO | The description "Work on Fee Application" is vague, and only 50% of the time charged is allowed. | 40.00 |
| 01/28/09 | RWO | The description "Work on Fee Application" is vague, and only 50% of the time charged is allowed. | 200.00 |
| 01/28/09 | BLR | The draft letter to the Court (0.4) fails to identify the subject matter of the letter, and is disallowed. The subsequent entry (0.8) is lumped, and only 30 minutes is allowed. | 437.50 |
| 01/29/09 | RWO | The description "Work on Fee Application" is vague, and only 50% of the time charged is allowed. | 100.00 |
| 02/06/09 | HJG | "Attention" to the fee application does not adequately describe the service, and only 50% of the time charge is allowed. | 342.50 |
| 02/10/10 | HJG, BLR | Each applicant traveled to, attended and returned from a Court hearing. Each billed 8.5 hours, which include seven hours of travel time. The application fails to explain why two attorneys had to travel an aggregate of fourteen hours to attend a hearing particularly where one or more attorneys could be made available by telephone to answer any questions. The total billed by the attorneys is $11,135.00, and 50% of that amount is allowed. | 5,567.50 |
| **Total** | | | 11,253.25 |

Second, the following entries are reduced based upon lumping:

| Date of Service | Timekeeper | Reason for Disallowance | Amount Disallowed ($) |
|---|---|---|---|
| 01/08/09 | SJO | The first entry (3.4 hrs.) is lumped, and only 30 minutes is allowed. | 1,160.50 |
| 01/14/09 | SJO | The entry is lumped, and only 30 minutes is allowed. | 109.50 |
| 01/22/09 (First Entry) | NEG | The entry is lumped, and only 30 minutes is allowed. | 280.00 |
| 01/22/09 (Second Entry) | NEG | The entry is lumped, and only 30 minutes is allowed. | 70.00 |
| 01/22/09 | BEP | The entry is lumped, and only 30 minutes is allowed. | 105.00 |
| 01/26/09 | NEG | The entry is lumped, and only 30 minutes is allowed. | 112.00 |
| 01/26/09 | DJM | The entry is lumped, and only 30 minutes is allowed. | 39.00 |
| 01/27/09 | DGT | The entry is lumped, and only 30 minutes is allowed. | 485.00 |
| 01/28/09 | BLR | The entry is lumped, and only 30 minutes is allowed. | 1,687.50 |
| 02/05/09 | DGT | The entry is lumped, and only 30 minutes is allowed. | 242.50 |
| 02/06/09 | RWO | The entry is lumped, and only 30 minutes is allowed. | 200.00 |
| 02/12/09 | JLS | The entry is lumped, and only 30 minutes is allowed. | 58.50 |
| 01/23/09 | NEG | The entry is lumped, and only 30 minutes is allowed. | 182.00 |
| Total | | | 4,731.50 |

Vlahos also contends that other time records submitted by the Law Firms suffer from defects involving vagueness and inadequate descriptions. (Vlahos Objection pp. 26–28.) As noted, Vlahos submitted marked up versions of the time records. It appears that he objects to every time record in which the verb "review" appears, contending that the word "review" is inherently vague. It obviously means "read" which is perfectly clear.[4]

Vlahos's criticism of "attention to" some document or task is on firmer ground. It is impossible to determine the nature of the service or activity that "attention" purports to describe. The Robinson Brog records do not contain such entries, but the Wiley Rein records include a few.[5] These entries aggregate $1,167.50, and 50% of these charges, or $583.75, will be disallowed.

## D.    Preparing and Defending Fee Applications

While the cost of preparing a fee application is compensable, the cost of defending one may not be. The Bankruptcy Code expressly covers the former. See 11 U.S.C. § 330(a)(6) ("Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application."). Moreover, the professional must prepare and submit an application in order to get paid. Boldt v. Crake (In re Riverside-Linden Inv. Co.), 945 F.2d 320, 323 (9th Cir. 1991).

There is no parallel statutory requirement to defend against an objection to a fee application, or to receive compensation for the legal fees incurred in that defense. Furthermore, fee litigants, like other litigants, must generally bear their own legal expenses under the

---

[4]      Many of the entries that Vlahos identified are parts of larger entries that have been substantially reduced based on lumping.

[5]      See HJG (12/27/07 - $302.50); HJG (2/14/08 - $325); HJG (4/25/08 - $325); DGT (6/16/08 - $215).

"American Rule." In re St. Rita's Assocs. Private Placement, L.P., 260 B.R. 650, 652 (Bankr.

W.D.N.Y. 2001); In re DN Assocs., 165 B.R. 344, 349–50 (Bankr. D. Me. 1994); see Alyeska

Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975) ("In the United States, the

prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.").

     Nevertheless, some courts have awarded the litigation fees and expenses incurred by the

successful applicant out of fear that the failure to do so would dilute the fee award, and

encourage parties to file frivolous objections. E.g., Smith v. Edwards & Hale, Ltd. (In re Smith),

317 F.3d 918, 929 (9th Cir. 2002); Hennigan Bennett & Dorman LLP v. Goldin Assocs. (In re

Worldwide Direct Inc.), 334 B.R. 108, 111 (D. Del. 2005); In re Ahead Commc'ns Sys., Inc.,

No. 02-30574, 2006 WL 2711752, at *5 (Bankr. D. Conn. Sept. 21, 2006).  Conversely, other

courts have declined to award the fees where the objection was filed in good faith and the

objecting party prevailed. In re Teraforce Tech. Corp., 347 B.R. 838, 867 (Bankr. N.D. Tex.

2006); In re St. Rita's Assocs, 260 B.R. at 652.  At least one court has expressed the concern that

allowing the losing applicant to recover its legal fees would encourage meritless fee requests

because the applicant could earn more fees opposing objections to its frivolous request. See In re

Riverside-Linden Inv. Co., 945 F.2d at 323.

     Finally, Vlahos is correct that the review and editing of time records – as opposed to fee

applications -- is not compensable.  Outside of bankruptcy, lawyers presumably do not charge

their clients for preparing time records.

     Wiley Rein billed a total of $8,011.50 to the preparation of its employment applications,

and this amount is allowed.  The firm also billed a total of $35,264.00 to preparing and defending

its fee applications, and this is a case in which it is appropriate to allow the defense costs to the

19

extent sought in the final application.  Although Vlahos interposed his objections in good faith, Wiley Rein has substantially prevailed, and denial of the defense costs would dilute its award. Thus, the fees sought in the final application for defending the fee applications are allowed except to the extent they have been disallowed on other grounds.

The fees must be reduced, however, as the time records are replete with entries indicating that Wiley Rein professionals billed the estate for reviewing and editing time records.[6]  In fact, BLR charged the estate in excess of $1,300.00 for these services just on June 12 and 13, 2008. Consequently, the Court will disallow $7,500.00 connected with the preparation of the fee applications.   Robinson Brog billed a combined total of $22,794.50 under its first and second interim fee applications and its supplemental application in connection with its retention, fee applications and defense of its fee applications.  Except in three instances,[7] Robinson Brog did not charge the debtor for the preparation of its bills.  These three instances result in a disallowance of $300.00.  The balance of the objection is overruled, and $22,494.50 is allowed except to the extent that the corresponding time entries have been disallowed on other grounds.

## E.    Use of Multiple Lawyers

Vlahos objects to conferences involving two or more lawyers, each billing for his or her time.  (Vlahos Objection pp. 29–30.)  He contends that "more than half of the [Robinson Brog] entries are cursorily described internal conferences, or conferences with Wiley Rein," that most of A. Mitchell Greene's entries on the first thirteen pages of time sheets constitute conferences

---

[6]      Entries by RWO reflecting the review and editing of billing statements in 2008 include the following: February 6, 15, 22; March 27; April 2, 14, 15, 25; June 5, 6, 9, 10, 11, 13, 16, 18; September 25, 26, 30 and October 10.  DGT billed similar services in 2008 on March 6 and 10, June 13 and September 22.  Finally, BLR billed for reviewing and editing billing statements in 2008 on June 12 and 13 and December 24.

[7]      LS billed time for reviewing or editing bills in 2008 on April 18, June 9 and November 27.  The aggregate time is 0.8 hours.

without any subsequent action by Greene, and that "[t]he entire application of Robinson Brog has 'conference' as its most predominate entry." (Id. pp. 30.)  He also contends that Wiley Rein's application reflects many muli-lawyer internal conferences, and offers eight examples.

I do not take issue with the proposition that multiple lawyers billing for unnecessary conferences is unreasonable and should not be compensated.  It does not follow, however, that two or more lawyers billing their time attending the same conference is per se unreasonable.  In particular, the early stages of a chapter 11 case are often chaotic, require the performance of multiple tasks in a compressed time frame, and hence, necessitate frequent communication among lawyers in the same firm, between the lawyers and the client, and where required, between general and special counsel.  Furthermore, lawyers inevitably meet and confer during the entire case regarding what must be done.  The debtor decided to engage both general and special counsel in this case, and communication and coordination between the two sets of counsel is as necessary as it is inevitable.

That said, I disagree that a majority of the Robinson Brog time entries involve multiple conferences, or that conference entries "predominate" the firm's time records.  The statement is hyperbole.  Moreover, while it is true that the first thirteen pages of time records include numerous conferences involving Greene, they are relatively brief.  Furthermore, many of the conferences are between Greene and his partner Lori Schwartz, and the entry identifies the subject of the conference.  It was certainly more efficient for Greene to meet briefly with Schwartz to discuss matters and give directions, than for the two to exchange streams of emails.  Finally, the entries list several conferences between Greene only and Vlahos.  These do not implicate multi-lawyer billing.  My observations in this case convince me that Vlahos was

heavily involved in the strategy and execution of the strategy, and his involvement increased the number of conferences.

I have also reviewed the time records to determine if more than one lawyer unnecessarily attended depositions or court hearings. Except as noted above regarding the attendance of two lawyers involving the defense of the Wiley Rein final fee application, I have not found that either Robinson Brog or Wiley Rein overstaffed these specific matters.

## F.    Travel Time

According to Vlahos, Bennett Ross of Wiley Rein told him at the time the firm was retained that the estate would not be billed for travel time to and from Washington, D.C. According to Vlahos, this induced him to hire Wiley Rein. (Vlahos Objection 33.) Wiley Rein denies that any such agreement was made, and observes that the engagement letter does not refer to such an agreement. (Wiley Rein Response 14–15.) Nor for that matter does it appear in the retention application or order. As Wiley Rein has already reduced its travel time charges by 50%, (id. 15), no further reduction is warranted, and the objection is overruled.

## G.    Remaining Objections

Vlahos argues that the firms' applications lack the certification required by the UST Guidelines stating that the UST and the debtor have been provided with a statement of fees and disbursements twenty days after the end of each billing month. The failure to make the certification is harmless as Vlahos has had ample opportunity to review and comment on both firms' fees. Vlahos also contends that the time records are not broken down by project, although my examination of the records satisfies me that he is clearly mistake; both firms used project billing.

22

Next, Vlahos contends that the Court should disallow time charges reflecting the performance of ministerial or clerical tasks.  (Vlahos Objection pp. 28–29.)  He identified a few entries that involved either the preparation of a file or correspondence concerning court reporter fees.  The time was minimal.  It is often more efficient for a lawyer to spend twelve or eighteen minutes preparing a file, than to spend more time explaining the task to a secretary or paralegal and thereafter checking to make sure it was done right.  The same holds true for communicating with transcript vendors.  This objection is overruled.

Finally, to the extent not previously discussed, I conclude the balance of Vlahos Objection lacks merit and is overruled.

### RECAPITULATION

The Court has disallowed a total of $78,910.50 of the fees sought by Robinson Brog.  Accordingly, Robinson Brog is allowed a final fee of $571,592.00 in addition to reimbursed expenses in the amount of $20,175.28.  The Court has also disallowed $46,136.00 of the fees requested by Wiley Rein, resulting in a final award of $1,008,166.50 in fees and $47,141.74 in expenses.  The parties are directed to settle a proposed order that fixes the amount of the final fees and expenses, reflects the amounts that have been paid on an interim basis and sets forth the net amounts due.

The foregoing constitutes the Court's findings of fact and conclusions of law.

Dated: New York, New York
       August 24, 2010

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge